The STATE of Texas, Appellant,

v.

Pamela C. LOPEZ, Appellee.

The STATE of Texas, Appellant,

v.

Ricky T. SMITH, Appellee.

Nos. 01–88–00464–CR, 01–88–00465–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 12, 1989.

John B. Holmes, Dist. Atty. Harris County, Kathy Giannaula, Asst. Dist. Atty., for appellant.

Loren A. Detamore, Detamore & Detamore, Don Lambright, Brian W. Wice, Houston, for appellees.

Before EVANS, C.J., and SAM BASS and COHEN, JJ.

## OPINION

EVANS, Chief Justice.

The appellees were charged with possession of over 400 grams of methamphetamine. The State appeals from an order granting the appellees' motions to suppress.

As a preliminary matter, the appellees contend tht we should dismiss the appeal for lack of jurisdiction because the State failed to serve a copy of its notices of appeal on opposing counsel in accordance with Tex.R.App.P. 4. The record shows that the State timely filed its written notices of appeal, but did not send a copy of the notices of appeal to the appellees' counsel. The appellees then moved to set aside the notices of appeal, which the trial court granted. Thereafter, this Court granted a writ of mandamus, directing that the trial court vacate its order striking the notices of appeal, but leaving open until this time the question of whether the State properly perfected its appeals. *State ex rel. Holmes v. Kolenda*, 756 S.W.2d 39 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding).

The State contends that Tex.Code Crim. P.Ann. art. 44.01 (Vernon Supp.1988) is the only statute governing the State's right to appeal. Because that statute does not expressly provide that a State's notice of appeal be in writing, the State contends that it was not required to serve a copy of its notices of appeal on opposing counsel.[1] The State also argues that Tex.R.App.P. 40(b)(1), which requires that "notice of appeal shall be given in writing filed with the clerk of the trial court" and that "[t]he clerk ... shall immediately send one copy to the clerk of the appropriate court of appeals and one copy to the attorney for the State," applies only to a criminal defendant, not the State. The State further argues that the appellees received adequate notice of the State's appeals because, four days after the notices of appeal were filed, the clerk of the court notified the appellees' counsel by mail that the State's notices of appeal had been filed and that the appeals had been assigned to this Court. The appellees do not contend that they were not notified of the appeals, but that the State was required by Tex.R.App. P. 4 to serve a copy of its notices of appeal upon opposing counsel and that it failed to perform that duty.

■ Although the State did not properly serve a copy of its notices of appeal on the appellees as the rules require, the appellees were not substantially prejudiced by the manner in which they received notification of the State's appeals. The notices of appeal were timely filed with the clerk of the trial court, and the appeals were perfected at that time. Tex.R.App.P. 41(b). To the extent that the State failed to comply with the rules of appellate procedure regarding service of the notices of appeal, we suspend that statutory requirement. *See* Tex.R.App.P. 2(b); *Jiles v. State*, 751 S.W.2d 620 (Tex.App.—Houston [1st Dist.] 1988, pet. filed).

---

**1.** We also note that article 44.01(h) provides that "[t]he Texas Rules of Appellate Procedure apply to a petition by the State to the Court of Criminal Appeals for review of a decision of a court of appeals in a criminal case." There is no similar provision for criminal appeals to a court of appeals. However, Tex.R.App.P. 1(a) provides that "[t]hese rules govern procedure in appeals to courts of appeals from district courts...."

■ We next address the merits of the State's appeal. In its first point of error, the State contends that the trial court erred in refusing to allow it to make a bill of exception with respect to the trial court's rejection of the search warrant presented by the State at the hearing in appellees' motions to suppress. We sustain this point.

After the trial court granted the appellees' motions to suppress on May 5, 1988, the State on May 19, 1988, filed a formal bill of exception in both causes, which the court denied on the basis that it was not timely filed. *See* Tex.R.App.P. 52. The State then filed its notices of appeal on May 20, 1988. Tex.R.App.P. 52(c)(11) provides that a bill of exception is timely if filed within 60 days after the sentence is pronounced or suspended in a criminal case. Under rule 44.01(e), "[t]he State is entitled to a stay in the proceedings pending the disposition of an appeal." Here, the record shows that the State properly perfected its bill of exception, and we will consider the bill of exception as part of the appellate record.

In point of error two, the State contends that the trial court abused its discretion in refusing to accept the State's offer of exhibits one and two, the original and a certified copy of the search warrant.

At the motion to suppress hearing, Inspector Tandy, of the Fort Bend County Sheriff's Office, identified State's exhibit one as the original search warrant, which he testified had been drawn up by him and signed by a judge. The appellees objected to the introduction of this exhibit on the ground that it was not a true and correct copy of the warrant on file with the district clerk. The appellees pointed to the fact that the exhibit had no file stamp and that it differed from a certified copy of the warrant in their possession. On the appellees' copy, the "return" certification was left blank, but was signed by the magistrate. Inspector Tandy then testified that two or three copies of the warrant were signed by the magistrate. At that point,

the trial court recessed the trial to permit the State to obtain a certified copy of the warrant, which the State offered as exhibit two. Inspector Tandy then identified exhibit two as a true and correct copy of the warrant he had executed. The appellee objected that this exhibit was incomplete because the return certificate was blank. The trial court declined to rule on its authenticity at that time, but at the conclusion of Inspector Tandy's testimony, granted the appellees' motion to suppress.

■ A magistrate's failure to execute the return on a search warrant does not necessarily vitiate its effectiveness. *See Phenix v. State*, 488 S.W.2d 759 (Tex.Crim. App.1973). Here, the magistrate executed the return, but he did so in blank, thus certifying that nothing was seized when the warrant was executed. The trial court could consider that fact in deciding whether the warrant had been validly issued.

■ Considering the inconsistencies in Inspector Tandy's testimony, the trial judge was not compelled to accept his testimony as conclusive proof that exhibit two was an authentic copy of the original search warrant signed by the magistrate. The State had already presented one document, which purported to be the original of the search warrant signed by the magistrate. The State then withdrew that document, which contained a completed return but no file mark, and substituted an entirely different document, which contained a file mark but no return certificate. The trial court could have entertained a reasonable doubt about whether exhibit two was, in fact, an authentic copy of the original search warrant signed by the magistrate. Thus, it was within the trial court's prerogative to reject exhibit two and to conclude that the State had failed to prove that the search had been conducted pursuant to a validly issued warrant.

The admission or exclusion of evidence is a matter peculiarly within the province of the trial court. *Jackson v. State*, 575 S.W. 2d 567, 570 (Tex.Crim.App.1979). A trial

court's ruling on the evidence will be reversed only upon a showing that the court abused its discretion. *Werner v. State*, 711 S.W.2d 639, 643 (Tex.Crim.App.1986). The testimony of Inspector Tandy only raised a fact issue as to the authenticity of the exhibit offered, and the trial court, sitting as the trier of fact, was not required to accept that witness' assurance that the document offered was authentic. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984).

We overrule the State's second point of error.

In the State's third point of error, the State contends that the arrest and search of the appellees' car was lawful, even in the absence of a valid warrant.

The decision to conduct the search was initiated after Inspector Tandy had a discussion with Officer Larry Pittman of the Fort Bend County Sheriff's Office. Officer Pittman had informed Inspector Tandy that he had been advised by a confidential informant, who had provided correct information in the past, that several parties, including the appellees, were manufacturing methamphetamine in their residence. The informant gave the appellees' names and a brief description of each, and told Officer Pittman that he had been inside the residence within the previous 48 hours and had observed both parties in possession of methamphetamine. He said that they were in the process of moving the methamphetamine to a different location because they thought they were being watched. Inspector Tandy testified that in December of 1987, he had received information from this informant that the appellees were manufacturing methamphetamine, and that he had accompanied the informant to the appellees' residence. At that time, he did not try to obtain a search warrant because he did not believe the informant's information constituted probable cause.

After the foregoing discussion, Tandy and several other officers drove by the appellees' residence. Tandy testified that he intended to show the other officers the location and then leave to obtain a search warrant while the other officers set up surveillance. As soon as the officers arrived at the residence, they saw the two persons coming out the door; appellee Lopez was carrying a briefcase, and appellee Smith was carrying a large box. The appellees then placed the items in the truck of an Oldsmobile, got into the car, with appellee Lopez in the driver's seat, and drove off. Believing that appellees were "moving the narcotics from that location," Tandy notified a uniformed highway patrol unit and followed appellees' vehicle until it stopped in a convenience store parking lot. With guns drawn, the officers then approached the car, identified themselves as police officers, and ordered the appellees out of the car. According to Tandy's testimony, he then walked to the rear of the car, and based on his past experience, detected the odor of methamphetamine coming from the trunk. The officers then obtained keys from the appellees and opened and searched the trunk of the car. The large box was found to contain clothing, but when they pried open the locked briefcase with a penknife, they found 28 grams of methamphetamine, as well as some marijuana, pills, and syringes.

After the appellees were placed under arrest, Tandy obtained a search warrant for the appellees' residence. As a result of the search conducted pursuant to that warrant, the officers recovered six gallons of methamphetamine oil, laboratory glassware, and numerous empty chemical precursor packages used in the manufacture of methamphetamine.

For a warrantless arrest or search to be justified, the State must show existence of probable cause at the time the arrest or search is made, as well as the circumstances that made the procuring of a warrant impracticable. *Brown v. State*, 481 S.W.2d 106, 109 (Tex.Crim.App.1972). The determination of probable cause at the time of the questioned action is viewed from the "totality of the circumstances." *Angulo v. State*, 727 S.W.2d 276 (Tex.Crim. App.1987).

■ The trial court has broad discretion in determining the admissibility of the evidence, and an appellate court will not reverse unless a clear abuse of discretion is shown. *Williams v. State,* 535 S.W.2d 637 (Tex.Crim.App.1976). The trial judge is the sole fact finder at a hearing on a motion to suppress evidence obtained in a search, and the judge may choose to believe or disbelieve any or all of a witness' testimony. *Taylor v. State,* 604 S.W.2d 175 (Tex.Crim. App.1980).

In this case, Inspector Tandy testified that the informant gave the appellees' names and described Smith as a white male and Lopez as a Hispanic female, both between 27 and 30 years old and having "average" height and weight. Tandy admitted, however, that the informant did not provide the suspects' hair color or other identifying characteristics. Tandy further testified that he had never seen the appellees before, and simply stated that when he saw the two persons, "[i]n my mind, I felt that was them."

Thus, when Inspector Tandy saw two persons matching the informant's general descriptions, one carrying a briefcase and the other carrying a box, he simply concluded that the suspects, described by the informant, were moving their laboratory to another location. Although the informant said that he had seen five-gallon bottles and chemicals, such as "ether, acetone, acid, things like that," in the house, Inspector Tandy did not see such paraphernalia being carried from the house to the car.

■ Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we cannot say that the trial court, sitting as the trier of fact, abused its discretion in refusing to accept the officer's explanation as probable cause for conducting the search. The trial court could reasonably conclude that the informant's general description was insufficient for identification purposes and that the actions of the appellees were as consistent with innocent activity as with criminal activity. *See Schwartz v. State,* 635 S.W.2d 545 (Tex.Crim.App.1982).

■ Neither does the officer's testimony that he detected the odor of methamphetamine coming from the trunk of the car, constitute such compelling evidence that the trial court was required to accept it as true. The trial court could reasonably have doubted Tandy's ability to detect the smell of the relatively small quantity of methamphetamine located inside the briefcase, inside the closed trunk.

■ We further note that Inspector Tandy testified that the appellees were in custody before the trunk was opened and that seven officers were on the scene, yet they did not obtain a warrant. Based on this testimony, the trial court could reasonably have decided that when Tandy placed both appellees in custody, he had ample opportunity to obtain a warrant for the search of their car, and thus, that no exigent circumstances authorized a warrantless search. *See Green v. State,* 594 S.W. 2d 72 (Tex.Crim.App.1980); Tex.Code Crim. P.Ann. art. 14.04 (Vernon 1977). For this reason alone, the trial court's granting of the motion to suppress does not constitute an abuse of discretion.

We accordingly hold that the State failed to demonstrate an abuse of discretion, and we overrule the third point of error.

In its fourth point of error, the State argues that the search of the appellees' residence was conducted pursuant to a valid search warrant. For the reasons previously given, we overrule this contention because the trial court was not compelled to find that the search warrant had been validly issued.

The trial court's order granting the motion to suppress is affirmed.