Clifton E. CORNEALIUS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–92–01018–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 6, 1994.

Rehearing Denied Jan. 27, 1994.

James Supkis, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

LEE, Justice.

Appellant was charged in a multi-count indictment with the murders of three persons and the attempted murder of a fourth person during the commission of an aggravated robbery. Appellant was arrested following a two-month investigation.[1] Pursuant to a plea bargain agreement, appellant pled guilty to two counts of aggravated robbery, one count of murder, and one count of attempted capital murder. Upon an affirmative finding of the use of a deadly weapon, the trial court found appellant guilty and assessed punishment at 45 years for each count. Appellant brings thirteen points of error complaining of the trial court's jurisdiction and the denial of his pretrial motions, the rehabilitation of a recused trial judge, and the legality of his arrest as a juvenile. We affirm.

We begin with appellant's fourth point of error, in which he contends that the trial court erred in concluding that a peace officer does not need to obtain an arrest warrant to arrest a juvenile. Appellant cites *Lanes v. State*, 767 S.W.2d 789 (Tex.Crim. App.1989) in support of his position. Howev-

er, the court in *Lanes* was confronted with the specific issue of "whether the probable cause requisite of Art. I, Sec. 9 of the Texas Constitution and the Fourth Amendment of the U.S. Constitution, applicable to the states through the Fourteenth, (sic) applies to the arrest of a child." 767 S.W.2d at 791. After an exhaustive analysis of the juvenile justice system, the Court concluded that the probable cause requirement of Art. I, Sec. 9 and the Fourth Amendment should be extended to juvenile proceedings. 767 S.W.2d at 800. The Court did not however, as appellant contends, hold that a warrantless arrest of a juvenile was prohibited. On the contrary, the Court expressly stated that, "juveniles can freely be arrested without a warrant." 767 S.W.2d at 801; see also *Vasquez v. State*, 739 S.W.2d 37, 41–42 (Tex.Crim.App.1987) *reh'g denied*, 816 S.W.2d 750 (Tex.Crim.App. 1991). The Court reasoned that "at the very least, law enforcement officers can be expected to personally have probable cause for a juvenile arrest and also be held responsible for a reasonable articulation of such at a later hearing." *Id.* The requirement that the arresting officer possess probable cause to arrest a juvenile does not extend to requiring an arrest warrant in the juvenile setting.

In fact, the Legislature, in adopting Article 52.01 of the Family Code, expressed an intent to allow a juvenile suspect to be taken into custody without a warrant. Subsection (a) of Article 52.01 provides that a child may be taken into custody: (1) pursuant to an order of the juvenile court; (2) pursuant to the laws of arrest; (3) by a law-enforcement officer who reasonably believes that the child has engaged in delinquent conduct; or (4) by a probation officer if there are reasonable grounds to believe that the child has violated a condition of probation imposed by the juvenile court. Tex.Fam.Code Ann. § 52.-01(a)(1)–(4). Appellant's fourth point of error is overruled.

In his first point of error appellant contends that the trial court erred in finding his arrest was based upon sufficient probable cause. Appellant contends that at the hearing on his motion to suppress, the State did

---

1. The crimes occurred on August 27, 1991. Appellant was arrested on November 7, 1991. Appellant was sixteen years of age at the time of his arrest.

not produce an arrest warrant and thus had the burden of establishing the evidentiary facts necessary to show probable cause. Appellant argues that the State failed to meet such burden in that it failed to offer into evidence the statement of co-defendant, Deandrea Allen, which identified appellant as the third participant in the triple murder, or failed to establish Allen as a credible and trustworthy informant.

■ As stated previously, the Court of Criminal Appeals extended the probable cause requirement of Article 1, Section 9 and the Fourth Amendment to juvenile proceedings. *Lanes,* 767 S.W.2d at 800. Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, are sufficient to warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Hawkins v. State,* 660 S.W.2d 65, 70 (Tex.Crim.App.1983), *cert. pending,* —— U.S. ——, 113 S.Ct. 1147, 122 L.Ed.2d 498 (1993). A statement against penal interest is inherently credible and may be sufficient, in and of itself, to establish probable cause. *Williams v. State,* 644 S.W.2d 751, 752 (Tex. App.—Beaumont 1982, no pet.). In reviewing the sufficiency of probable cause, the appellate court will look to the facts and circumstances of each case. *Woodward v. State,* 668 S.W.2d 337 (Tex.Crim.App.1982) (opinion on reh'g), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

■ The following facts were known to the police when appellant was taken into custody:

1. Manuel Carrillo, Francesca Rincon–Garza, and Abraham Ramos were murder victims of a robbery.

2. Julio Gallegos survived the assault and was seriously wounded.

3. Julio Gallegos identified the perpetrators as three black males.

4. Police first arrested Kenneth Brown, who confessed to his participation in the crime and identified his cousin and a third person, namely Deandrea Allen, as co-participants.

5. Upon his arrest, Deandrea Allen identified himself, Kenneth Brown, and Brown's cousin, Clifton Cornealius as participants in the murders.

6. Brown, Allen, and Cornealius are all black males. This is consistent with the statement made by the only surviving victim.

7. When first informed by police that they were conducting a homicide investigation, Cornealius responded by saying "he didn't know anything about any murders."

We hold that the facts and circumstances within the knowledge of the arresting officer, and of which he had reasonable trustworthy information were sufficient to warrant a reasonable belief that appellant had committed the offenses against Carrillo, Garza, Ramos, and Gallegos. While it is true that the police had never dealt with Deandrea Allen prior to this occasion and did not know of his credibility, Allen's statement that he was part of the criminal combination was sufficient to establish his credibility and trustworthiness. See *Williams,* 644 S.W.2d at 752. We further hold that the arresting officer had sufficient probable cause to take appellant into custody. Appellant's first point of error is overruled.

■ In his third point of error appellant argues that because he was arrested without a warrant at his residence the State has the burden of establishing the reasonableness of his arrest. Appellant contends that he lives with his grandmother, and it was at her house where police arrested him.[2] According to appellant, the State failed to establish that the house from which appellant was arrested was not his home. As such, appellant contends that his statement was taken illegally and should have been suppressed.

The warrantless entry into a home for the purpose of either arrest or search is prohibited by the Fourth Amendment unless both probable cause and exigent circumstances

---

**2.** The trial court's findings of fact reveal that appellant was standing on the front porch of his grandmother's house when he was arrested.

are present. *Welsh v. Wisconsin,* 466 U.S. 740, 740, 104 S.Ct. 2091, 2093, 80 L.Ed.2d 732 (1984); *Payton v. New York,* 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980). See also *Jefferson v. State,* 830 S.W.2d 320 (Tex.App.—Austin 1992, pet. ref'd); *State v. Williams,* 812 S.W.2d 46 (Tex.App.—Corpus Christi 1991, no pet.); *State v. Lopez,* 763 S.W.2d 939 (Tex.App.— Houston [1st Dist.] 1989, pet. ref'd). Indeed, the protections extended under Art. 1, Sec. 9 to private residences, apply as well to appurtenances necessary for the comfort of the home or place of business. See TEX.CONST. Art. 1, Sec. 9, interp. commentary (Vernon 1984).

Having found in point of error number one that probable cause existed, we now turn our attention to the existence of exigent circumstances to determine whether appellant's arrest was illegal. In *Payton v. New York,* supra, the United States Supreme Court made it clear that absent exigent circumstances, police may not enter a suspect's home to make a warrantless arrest. 445 U.S. at 583, 100 S.Ct. at 1378. In *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Court went a step further and announced that although police may be armed with an arrest warrant, they may not enter the home of a third party to effect the intended arrest absent exigent circumstances or a search warrant. 451 U.S. at 204–206, 222–224, 101 S.Ct. at 1644, 1653.

Since appellant has established that he was arrested without a warrant, the burden is shifted to the State to prove the reasonableness of the seizure. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Jamail v. State,* 731 S.W.2d 708, 710 (Tex.App.—Houston [1st Dist.] 1987), *aff'd,* 787 S.W.2d 380 (Tex.Crim.App.1990); *See* TEX.CODE CRIM. PROC.ANN. art. 14.04 (Vernon 1977). There has been no showing by the State that the circumstances surrounding appellant's arrest were such that procuring a warrant was impracticable. Absent such proof, the State has failed to show that arresting appellant at his home or the home of his grandmother was reasonable.

Having concluded that the arrest of appellant was improper, it is generally necessary that all evidence obtained as a direct result of the illegal arrest of appellant be suppressed under the exclusionary rule of the Fourth Amendment and Article 1, Section 9. *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Boyle v. State,* 820 S.W.2d 122, 130 (Tex. Crim.App.1989), *cert. denied,* — U.S. —, 112 S.Ct. 1297, 117 L.Ed.2d 520. However, if the State can demonstrate that the connection between appellant's illegal arrest and his subsequent confession is sufficiently attenuated from the primary taint to permit the use of appellant's statement at trial to acquire a conviction, then the illegal arrest will not prevent the court from denying appellant's motion to suppress. *Jones v. State,* 833 S.W.2d 118, 124 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Fierro v. State,* 706 S.W.2d 310, 314 (Tex.Crim.App.1986).

■ In determining whether the taint on evidence obtained subsequent to an illegal arrest is sufficiently attenuated to permit its use at trial, account must be taken of:

1) the giving of *Miranda* warnings;

2) the temporal proximity of the arrest and the confession;

3) the presence of intervening circumstances; and

4) the purpose and flagrancy of the official misconduct.

*Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Little v. State,* 758 S.W.2d 551, 565 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988); *Self v. State,* 709 S.W.2d 662 (Tex.Crim.App.1986).

■ In the instant case, appellant was given *Miranda* warnings at least three times prior to giving his statement. Two of those warnings were by separate magistrates. Moreover, appellant's statement was not contemporaneous with his arrest, but rather was given more than two hours later and after meeting with one magistrate for at least fifteen minutes. Finally, the record shows that the police did not begin interrogating appellant until after he was brought before a neutral magistrate and advised of his rights, and appellant did not sign his confession until

he was taken before a second magistrate. There is no indication that the police acted with purposeful and flagrant misconduct.

From the foregoing analysis, we conclude that the taint on appellant's statement as a result of arresting him at his home without an arrest warrant was sufficiently attenuated and the trial court did not err in denying his motion to suppress. Appellant's third point of error is overruled.

Appellant's second point of error contends that the trial court erred in finding his warrantless arrest valid when there was no prompt showing of probable cause as required by the federal constitution.[3] We are unable to find in the record where this specific issue was brought to the attention of the trial court. As the State claims, appellant's motion to suppress never addressed this issue of prompt determination of probable cause.[4]

To preserve error for appellate review, the complaining party must make a timely and specific objection. TEX.R.APP.P. 52; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim. App.1991). A point of error that does not comport with the trial objection presents nothing for review. *Coffey v. State*, 796 S.W.2d 175, 179 (Tex.Crim.App.1990); *Thomas v. State*, 723 S.W.2d 696 (Tex.Crim.App. 1986). Absent a showing that appellant raised this issue in the trial court, we must overrule appellant's second point of error.

In his fifth, sixth, and seventh points of error appellant contends that the trial court erred in concluding that his arrest was reasonable, because he was denied access to the courts and equal protection of the law by the manner of his arrest under § 52.01 of the Texas Family Code. Appellant contends that § 52.01 violates Article I, Section 3 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution. Appellant claims he was denied equal

protection because he has no remedy equal to that of an adult, to exclude evidence seized pursuant to a warrantless arrest, as authorized under § 52.01. Texas Family Code section 52.01 authorizes the taking of a juvenile into custody "by a law-enforcement officer if there are reasonable grounds to believe that the child has engaged in delinquent conduct or conduct indicating a need for supervision."

Both equal protection provisions secure to all persons similarly situated equal protection under the laws of this State and the United States. The Legislature, by enacting Title 3 of the Family Code, has made a deliberate attempt to not treat delinquent juveniles as criminals. *Vasquez*, 739 S.W.2d at 44; *Garcia v. State*, 661 S.W.2d 754, 755 (Tex.App.—Beaumont 1983, no pet.); See *Lanes*, 767 S.W.2d at 791–792; *S C B v. State*, 578 S.W.2d 833 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The provisions of the Family Code pertaining to delinquency are civil in nature and were enacted both to allow juveniles to avoid the stigmatizing effect of arrest and to ensure that any child who is without proper supervision will be placed back into a supervised environment for the protection of the child and the rest of society. See TEX.FAM.CODE ANN. § 51.01; *Vasquez*, 739 S.W.2d at 43. Juveniles and adult criminal defendants are not similarly situated until the former is certified as an adult and comes within the purview of the adult criminal system. 739 S.W.2d at 43. Until the moment of transfer from the juvenile system to the criminal courts, the juvenile is cloaked with the trappings of a non-criminal proceeding with attendant safeguards such as greater protections in the areas of confession law and notice requirements. See TEX.FAM.CODE ANN. §§ 52.02, 52.03, 53.01 et seq.

---

3. The United States Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 126, 95 S.Ct. 854, 869, 43 L.Ed.2d 54 (1975), held that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention. In *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Court stated that such determinations of probable

cause should be made within 48 hours of the arrest. *Id.* at 56–57, 111 S.Ct. at 1669–1670.

4. Appellant's motion alleges that he was arrested without a warrant. The motion is silent as to any complaint of the promptness of a probable cause determination.

■ The Court of Criminal Appeals in *Milligan v. State,* 554 S.W.2d 192 (Tex.Crim. App.1977), stated that "[i]n the absence of a suspect classification, a state law is not repugnant to either constitutional provision so long as unequal treatment of persons is based upon a reasonable and substantial classification of persons." *Id.* at 194; *Vasquez,* 739 S.W.2d at 43. This different approach by the Legislature stems from benevolence, not discrimination, and is therefore based upon a reasonable and substantial classification. *Garcia,* 661 S.W.2d at 755. We hold § 52.01 of the Family Code does not deny appellant equal protection under the law.

Appellant also contends that he was denied equal access to the courts because he had no legitimate basis upon which to challenge the validity of his warrantless arrest. In light of our analysis of appellant's first, third, and fourth points of error we hold this contention to have little merit. Accordingly, appellant's fifth, sixth, and seventh points of error are overruled.

In his eighth point of error appellant contends that the evidence was insufficient to prove that he knowingly, intelligently, and voluntarily waived his right to remain silent. In addressing appellant's third point of error we determined that he received *Miranda* warnings at least three times and was brought before two neutral magistrates before giving a statement. We also determined that the police acted in good faith and without purposeful or flagrant official misconduct.

■ However, appellant also challenges the voluntariness of his confession due to alleged diminished mental capacity and a weak personality. Evidence of mental retardation and mental impairment is a factor to be considered by the court in determining from the totality of the circumstances whether the accused voluntarily and knowingly waived his rights prior to confessing. *Bizzarri v. State,* 492 S.W.2d 944, 946 (Tex. Crim.App.1973); *Green v. State,* 839 S.W.2d 935, 940 (Tex.App.—Waco 1992, pet. ref'd). The question is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his confession. *Casias v. State,* 452 S.W.2d 483, 488 (Tex.Crim.App.1970); *Green,* 839

S.W.2d at 940. A confession will not be considered involuntary absent police coercion "causally related to the confession." *Walker v. State,* 842 S.W.2d 301, 303 (Tex.App.— Tyler 1992, no pet.), *citing, Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986).

■ Dr. Jerome Brown, a clinical psychologist examined appellant and testified that appellant's verbal I.Q. was 70 and his performance I.Q. was 83. He stated that this was the range for individuals with psychopathic tendencies. Appellant now argues that the totality of the circumstances, especially considered in the light of his mental ability, show that he could not have intelligently and knowingly waived his right to remain silent, thereby rendering his confession involuntary. However, after reviewing the record, we find no evidence of coercive activity by the State. A defendant's mental condition, by itself and apart from its relation to official coercion, will never require a conclusion of involuntariness. *Colorado v. Connelly,* 479 U.S. at 164, 107 S.Ct. at 520; *Walker,* 842 S.W.2d at 303. The trial court found appellant's statement to be made freely and voluntarily. Absent an abuse of discretion, a trial court's findings concerning the voluntariness of a confession will not be disturbed on appeal. *Miniel v. State,* 831 S.W.2d 310 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). We conclude that the trial court did not abuse its discretion in finding appellant knowingly and voluntarily waived his right to remain silent. Appellant's eighth point of error is overruled.

Appellant's ninth point of error contends the trial court erred by holding it had jurisdiction over Count V in the indictment. In an order dated February 14, 1992, Judge Robert Baum of the 314th District Court, certified appellant to stand trial as an adult, waived jurisdiction over the cause, and transferred the same to the 184th District Court for a criminal trial. That part of the order reciting the criminal allegations against appellant reads:

... capital murder (2 paragraph) committed on or about the 27th day of August,

1991, complainant Manuel Carrillo, capital murder (2 paragraph) committed on or about the 27th day of August, 1991, complainant Francesca Garza, capital murder, (2 paragraph) committed on or about the 27th day of August, 1991, complainant Francesca Garza, and attempted capital murder (2 paragraph) committed on or about the 27th day of August, 1991, complainant, Julio Gallegos . . .

On May 13, 1992, Judge Baum issued a memorandum in which he declared that the repeated recitation of Francesca Garza's name in the February 14th order was a typographical and proofreading error, and that the name of Abraham Ramos was to be substituted for the second recitation of Francesca Garza. Immediately following this correction, the grand jury true-billed the indictment.[5]

In his motion to quash the indictment, appellant argued that the trial court had no jurisdiction over any allegation regarding the deceased Abraham Ramos, because the order transferring jurisdiction in this cause did not in any way transfer jurisdiction over such allegation.

When a motion or petition to waive jurisdiction alleges multiple offenses, the juvenile court must either waive or retain jurisdiction as to all offenses alleged, at one time. *Richardson v. State,* 770 S.W.2d 797, 799 (Tex.Crim.App.1989). When the juvenile court waives jurisdiction and transfers a juvenile to the criminal district courts, the juvenile court is transferring the underlying conduct of the offense or offenses. *Dixon v. State,* 639 S.W.2d 9, 10 (Tex.App.—Dallas 1982, no pet.). In the instant case, the juvenile court did not retain jurisdiction over any offense. It's certification order purported to transfer all offenses and conduct of appellant to the criminal courts. The conduct that was the basis for the capital murder indictment was the same conduct over which jurisdiction was transferred. Both the transfer proceedings and the indictment arose from appellant's causing the death of others while in the course of committing a robbery. Jurisdiction

in the criminal district court is not defeated by a mistake in misnaming a complainant, where the conduct that constituted the alleged offense was the identical conduct addressed by the juvenile court. *Id.*

Appellant argues further, that the amended order is void because it is a correction of a judicial error, and because it was obtained as a result of an ex parte communication with the judge.

A trial judge has the authority to correct mistakes and misrecitals in a judgment after the judgment becomes final so long as the error to be corrected is clerical rather than judicial in nature. *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex.1986); Tex. R.Civ.P. 316. This authority extends to orders of the court as well. See 51 Tex.Jur.3d *Motion Procedure* § 18, at 661. A judicial error is one which arises from a mistake in law or fact determinative to the outcome of the cause and requiring the exercise of "judgmental offices" to correct. *Andrews, supra* at 585; Black's Law Dictionary 848 (6th ed. 1990). A clerical error, on the other hand, is a mistake in writing or copying, the correction of which does not result from "judicial reasoning or determination." *Andrews, supra* at 585; Black's Law Dictionary 252 (6th ed. 1990). The determination of whether an error is judicial or clerical is a question of law and the trial court's determination is not binding on appeal. *Finlay v. Jones,* 435 S.W.2d 136, 138 (Tex.1969); *West Tex. State Bank v. General Resources Mgmt. Corp.,* 723 S.W.2d 304 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

In the present case, by replacing the name of complainant Francesca Garza with the name of Abraham Ramos, the trial court materially altered the substance of the February 14 order. That change constituted the correction of a judicial error which cannot be validly accomplished by a judgment nunc pro tunc. We hold nevertheless that the May 13 order is a valid certification order since the correction was made during the period within which the trial court still had plenary power over its order. See *Mathes v. Kelton,* 569

---

**5.** The memorandum was filed at 2:36 p.m. on May 13, 1992, and the criminal indictment was filed at 3:24 p.m.

S.W.2d 876, 878 (Tex.1978); *Go Leasing, Inc. v. Groos Nat'l Bank*, 628 S.W.2d 143, 145 (Tex.App.—San Antonio 1982, no writ). Until an indictment is returned by the grand jury, which in this case occurred after the judge corrected the February 14 order, the criminal district court could not acquire jurisdiction over the juvenile. Therefore, at the time juvenile court corrected its order, it still retained plenary power over this cause. Appellant's ninth point of error is overruled.

In his final four points of error appellant raises numerous complaints based on the recusal of Judge Bob Burdette. In point of error ten, appellant contends the trial court erred in rehabilitating Judge Burdette once the judge recused himself. In point of error eleven, appellant contends the trial court erred in entering the judgment of conviction because such judgment was entered by a recused judge. Appellant's twelfth and thirteenth points of error, contend the court erred by denying him a recorded hearing, and in denying him an opportunity to confront and cross-examine a witness.

Appellant's contentions are premised on the belief that an order of recusal was entered by Judge Burdette. However, we are unable to find in the record such an order. Appellant mistakenly relies on an order signed by Judge Charles J. Hearn as an order formalizing Judge Burdette's recusal. However, this order is nothing more than an order directing the District Clerk to assign the next capital murder complaint to the 184th District Court. There is no evidence in the record that either party requested a recusal of Judge Burdette, or that either party received notice that Judge Burdette recused himself. In fact, the record contains an affidavit by Judge Burdette in which the judge states he did not recuse himself from the case at any time.

Without evidence of a motion for recusal or an order of recusal, appellant's tenth, eleventh, twelfth, and thirteenth points of error are without merit and are accordingly overruled.

The judgment of the trial court is affirmed.