Affirmed and Memorandum Opinion filed February 1, 2005









Affirmed and Memorandum Opinion
filed February 1, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01363-CR

 

____________

 

JARVIS DWAND FRANKLIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

__________________________________________________

 

On Appeal from the 263rd District Court

Harris County, Texas

Trial Court Cause No. 931,631

__________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant Jarvis Dwand Franklin
appeals his conviction for capital murder on the grounds that the trial court
erred by: (1) denying his requested charge on the defense of necessity; (2)
admitting a videotape of his confession because it was given involuntarily; and
(3) admitting inflammatory photographs. 
We affirm.








I.  Factual and Procedural Background

Millena Hebert, Edward Shelby=s fiancé, was experiencing trouble
with the struts on the couple=s dark green car.  She
visited several auto-parts stores to price replacement struts.  Millena met appellant at one of these
stores.  Appellant told her that he fixed
cars and offered to install the struts on her car.  She exchanged phone numbers with appellant
but informed him that she would have to discuss the offer with Shelby.  Appellant walked Millena to her car, and, as
she was getting into it, appellant noticed the car=s $2,500 stereo system.  When she told Shelby of appellant=s offer, he told her he did not want
anyone working on the car who did not have his own shop.  Over the next several months, appellant
called Millena and Shelby between five and ten times offering to perform
various repairs to their car.

Appellant also proposed to trade his $1,500 disk changer and
CD player for Shelby=s stereo.  On November
10, Shelby agreed to meet with appellant to discuss swapping stereos. That
afternoon, two neighbors witnessed a dark car parked on their street for
several minutes.  Neither observed any
struggle between the occupants. One neighbor saw a tall black male dragging an
apparently lifeless Shelby out of the driver=s side of the car; both witnessed the
car speeding away.  Shelby died of a
gunshot wound to the right side of his forehead. 

Appellant was charged by indictment with capital murder for
intentionally causing the death of Shelby while in the course of committing a
robbery.  A jury convicted him, and the
trial court assessed punishment at life imprisonment in the Texas Department of
Criminal Justice, Institutional Division. 

                                                                 II. 
Analysis

A.        Did
the trial court err in denying appellant=s requested necessity instruction?








In his first issue, appellant argues that the trial court
erred in denying his request for an instruction on the defense of necessity
regarding the robbery element of his capital murder charge.  Appellant contends he was entitled to the
instruction because it was necessary for him to drive away in Shelby=s car to escape from Shelby after
appellant shot Shelby in self-defense because Shelby began choking him.

A defendant is entitled to an instruction on any properly
requested defensive issue raised by the evidence, regardless of whether the
evidence is weak or strong, unimpeached or contradicted, or credible or not
credible.  Granger v. State, 3
S.W.3d 36, 38 (Tex. Crim. App. 1999).  We
review the evidence in support of the defensive issue in the light most
favorable to the defense.  Stefanoff
v. State, 78 S.W.3d 496, 501 (Tex. App.CAustin 2002, pet. ref=d). 
Conduct is justified by necessity if: (1) the actor reasonably believes
the conduct is immediately necessary to avoid imminent harm, (2) the
desirability and urgency of avoiding the harm clearly outweigh, according to
ordinary standards of reasonableness, the harm sought to be prevented by the
law proscribing the conduct, and (3) a legislative purpose to exclude the justification
claimed for the conduct does not otherwise plainly appear.  Tex.
Pen. Code. Ann.' 9.22 (Vernon 2003).  

Section 9.22(1) requires the defendant to first bring forth
evidence of a specific imminent harm. 
Stefanoff, 78 S.W.3d at 501.  AHarm@ means anything reasonably regarded
as loss, disadvantage, or injury, including harm to another person in whose
welfare the person affected is interested.  Id. 
AImminent@ means something that is immediate,
something that is going to happen now.  Id. at 501.  Reading these definitions together, imminent
harm contemplates a reaction to a circumstance that must be the result of a Asplit‑second decision [made]
without time to consider the law.@ 
Id.








After reviewing the record, we conclude that the evidence at
trial did not raise a fact issue as to whether robbing Shelby of his car was
immediately necessary to avoid imminent harm to appellant after he shot Shelby
in the head.  In his videotaped confession,
appellant did state that Shelby was Astill moving@ after he was shot.  However, he does not argue how such might
constitute imminent harm.   In fact, the
evidence shows: (1) appellant shot Shelby in the right temple at a range of
less than two inches, while Shelby sat in the driver=s seat of his car; (2) appellant got
out of the passenger side of the car, ran around the car, pulled Shelby from
the driver=s side seat, and dropped his
300-pound body in the middle of the street; (3) appellant got back into the
car, this time in the driver=s seat, and sped off, driving over Shelby=s body in the process.  The medical examiner testified that Shelby
died as a result of a gunshot wound to the head.  Presuming the truth of appellant=s statements that Shelby was choking
him in the car and that Shelby pulled the gun on appellant, the evidence still
did not raise a fact issue as to whether it was immediately necessary for
appellant to take Shelby=s car to avoid imminent harm after he shot Shelby in the head.  See Ford v. State, 112 S.W.3d 788, 793
(Tex. App.CHouston [14th Dist.] 2003, no pet.)
(holding trial court did not err in denying necessity charge because evidence
did not raise fact issue as to whether appellant=s actions were necessary to avoid
imminent harm).  Accordingly, we overrule
appellant=s first issue.

B.        Did
the trial court err in admitting appellant=s videotaped confession?

In his second issue, appellant contends the trial court erred
in admitting a videotape showing his confession because it was given
involuntarily due to his mental health issues and hours of prolonged
interrogation.  

We review the trial court=s decision on a motion to suppress
under an abuse of discretion standard.  See Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996). Whether a confession is voluntary is a mixed
question of law and fact.  Garcia v.
State, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000).  Appellate courts should give almost absolute
deference to trial court determinations of historical fact supported by the
record, especially when those findings are based on an evaluation of
credibility and demeanor.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Appellate courts should afford the same
amount of deference to trial court rulings on mixed questions of law and fact
when the resolution of those ultimate issues turns on an evaluation of credibility
and demeanor.  Id. However, an
appellate court may review de novo mixed questions of law and fact that do not
fit within that category.  Id.








Article 38.21 of the Texas Code of Criminal Procedure
requires the statement to have been Afreely and voluntarily made without
compulsion or persuasion.@ 
Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). 
In determining the question of voluntariness, a court should consider
the totality of circumstances under which the statement was obtained.  Creager v. State, 952 S.W.2d 852, 855
(Tex. Crim. App. 1997).  A defendant=s mental deficiency alone is not
determinative of the voluntariness of the confession, but is only one factor to
be considered. See Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App.
1995).  In considering the impact of a
defendant=s mental deficiency, the issue
becomes whether the defendant=s mental impairment rendered him incapable of understanding
the meaning and effect of his confession. 
See Cornealius v. State, 870 S.W.2d 169, 175 (Tex. App.CHouston [14th Dist.] 1994), aff=d, 900 S.W.2d 731 (Tex. Crim. App.1995).  Further, absent evidence of police coercion
related to the taking of the confession, a defendant=s mental condition alone should not
render the statement involuntary on constitutional grounds.  See Colorado v. Connelly, 479 U.S.
157, 163B64, 107 S. Ct. 515, 520, 93 L. Ed.2d
473 (1986).








In this case, during trial, the trial court held a hearing
outside the presence of the jury to determine the voluntariness of appellant=s confession.  During the hearing, Sergeant Mehl and Officer
Swainson, both of the Houston Police Department Homicide Division, testified.
Mehl stated and Swainson confirmed that Mehl read appellant his Texas statutory
warnings[1]
and that appellant waived those rights on the tape and appeared to do so
voluntarily.  Both officers testified
that they had no trouble communicating with appellant, that appellant appeared
to understand what was going on and that neither officer threatened, coerced,
or promised appellant anything in return for his confession.  Mehl testified that he made extra efforts to
explain appellant=s rights to him, such as telling appellant he was absolutely
under no obligation to say anything. 
Mehl also testified that Swainson asked appellant to explain what the
word Aterminate@ meant to him.  Both Swainson and Mehl stated that when they
explained to appellant that any statement he made could be used against him,
appellant became concerned and that Swainson then explained to appellant that this
was his chance to explain to the jury and the court what happened. 

Mehl testified that, thirty-five minutes into the interview,
he did not think he would get any information out of appellant, that he was
prepared to terminate the interview, when he told appellant he had nothing
further to say to him.  Mehl stated that
he stood to leave the room and appellant started to cry and admitted shooting
and killing Shelby.  Mehl then asked him
whether he would be willing to make that statement on videotape and appellant
agreed. Officer Swainson stated that he left the room and returned about forty
minutes later.  Upon his return,
appellant was weeping and distraught and acknowledged his involvement. 

Mehl also stated that the total time for the interrogation
including the videotaped statement was one hour and twenty minutes, during
which time he offered appellant the opportunity to go to the bathroom, offered
him coffee, soda, and water, and provided appellant a glass of water between
statements.








On cross-examination, both Mehl and Swainson stated that they
did not get any information about appellant=s background with respect to
education, medication, or mental health. 
Defense counsel introduced a competency evaluation[2]
for the purpose of the hearing. Appellant also testified regarding the
voluntariness of his confession that: (1) he went through tenth grade taking
special-education classes; (2) he takes Depakote, Zoloft, and Zyprexa for
schizophrenia; (3) he did not think he had the right not to answer their
questions; (4) he was scared; (5) he did not understand the warnings; and (6)
one of the officers promised him that if he talked nothing would happen to him
and that was when he began confessing. 
The trial court viewed the videotape, in which appellant appears
emotional but clearly states that he understands each right as it is read to
him.  The trial court found that the
confession was freely and voluntarily given and in compliance with the Code of
Criminal Procedure.  In regard to this
ruling, the trial court made the following findings of fact and conclusions of
law:

Findings of Fact

1.         The defendant was arrested on November 25, 2002 pursuant to
a valid arrest warrant.

2.         After the defendant=s
arrest, Officer Eric Mehl informed the defendant of his constitutional and statutory
rights listed in article 38.22, '2, of
the Texas Code of Criminal Procedure. 
The defendant indicated he understood his rights and subsequently waived
his rights and agreed to provide a statement.

3.         The defendant was sober, alert, and was not mentally
impaired.  Though there is a reference in
the defendant=s statement that he was taking medication for
attention deficit disorder and schizophrenia, there is no evidence that the
defendant was mentally impaired by this medication or suffering from mental
imbalance at the time he gave his statement. 
Moreover, there is no evidence that the attention deficit disorder or
schizophrenia had an effect on the voluntariness of his statement.

4.         The defendant never invoked any of his constitutional or
statutory rights before or after giving his statement.

5.         No one coerced or threatened the defendant to make the
statement.  No one promised the defendant
anything in exchange for his statement.

6.         The officers who testified at the pretrial hearing on the
defendant=s motion to suppress the statement were credible.

7.         The defendant=s
testimony that he did not believe he had the right to refuse to answer the
questions and that the officers promised that nothing would happen to him if he
told them the truth was not credible.

 

Conclusions of Law

 

1.         The defendant was arrested pursuant to a valid arrest
warrant.








2.         The defendant=s
videotaped statement was freely and voluntarily made by the defendant, without
threats, promises, coercion, or other improper inducement on the part of any
police officer or individual.

3.         The defendant=s
statement was taken in full compliance with the requirements of article 38.22
of the Texas Code of Criminal Procedure, after the defendant knowingly and
intelligently waived the rights set out in article 38.22, '2, of the Texas Code of Criminal Procedure.

4.         The defendant=s videotaped statement is admissible
in evidence under articles 38.21 and 38.22 of the Texas Code of Criminal
Procedure and under all applicable provisions of the Texas Constitution and the
United States Constitution.

Given the conflicting testimony concerning appellant=s mental state at the time he made
the statements and the limited duration of the interrogation, and according
almost absolute deference to the trial court=s determinations of historical fact
supported by the record, we conclude the trial court did not abuse its
discretion in determining that appellant voluntarily made the statements.  See Guzman, 955 S.W.2d at 89; Creager,
952 S.W.2d at 854B57.  Accordingly, we
overrule appellant=s second issue.  

C.        Did
the trial court err in admitting photographs of Shelby=s body?

In his third issue, appellant argues the trial court erred in
admitting gruesome photographs taken of the crime scene and before and during
the autopsy of Shelby=s body.  Appellant
asserts these photographs were irrelevant and prejudicial.  








In this case, appellant complains of the admission of State
Exhibits: (1) 17-24[3]
depicting photos of the crime scene; (2) 50-60 showing photos of Shelby=s body at the morgue prior to the
autopsy being performed; and (3) 68 and 69 showing autopsy views of the exposed
brain and the bullet=s trajectory through it.[4]  At trial, appellant objected on the ground
that the photos were repetitious, irrelevant, and prejudicial.  On appeal, appellant fails to develop his
argument beyond the statement that all of the photographs were Ahighly inflammatory.@ 
In any event, even if the admission of these photographs were error, we
will not overturn a case on a non‑constitutional error if, after
examining the record as a whole, we have a fair assurance that it did not
influence the jury or influenced them only slightly.  See Hayes v. State, 85 S.W.3d 809, 816
(Tex. Crim. App. 2002).  Considering the
weight of other evidence, including appellant=s confession, we have fair assurance
that the trial court=s admission of these photographs did not unduly influence the
jury in its decision.  Accordingly, we
overrule appellant=s third issue. 

Having overruled all of appellant=s issues, we affirm the trial court=s judgment. 

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Memorandum
Opinion filed February 1, 2005.

Panel consists of Chief Justice
Hedges and Justices Frost and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Mehl testified
that he read to appellant and appellant waived the following rights: (1) the
right to remain silent and not to make any statement at all and that any
statement he made may be used against him; (2) the right to have a lawyer
present to advise him prior to and during questioning; (3) if he was unable to
employ a lawyer, the right to have a lawyer appointed to advise him prior to
and during questioning; and (4) the right to terminate the interview at any
time. 





[2]  The
evaluation, made on June 17, 2003, concluded that appellant was not suffering
from symptoms of a mental defect or a mental disease of sufficient severity to
prohibit him from standing trial. (RR v6 Defense Ex. 1)  The evaluation also reflected that appellant
reported having Attention Deficit-Hyperactivity Disorder and schizophrenia and
being prescribed several different anti-psychotic medications. 





[3]  Appellant’s
argument encompasses Exhibit 24 even though the State withdrew its proffer and
the photograph was never admitted into evidence.





[4]   In Hayes, the Court of Criminal Appeals
assessed a photo similar to the ones appellant complains of and arguably the
most “inflammatory,” stating, “Exhibit 19A depicts Rosalyn Robinson’s skin
pulled back around a grazing gunshot wound to the head, showing the path of the
bullet as it passed through her face, fracturing her facial bone and bruising
the brain.  If the skin were not pulled
back, the jury would not be able to see the full extent of one of her fatal
injuries.  The action of pulling back the
skin did not make the evidence significantly more gruesome.”  The court also found the admission of 19A, if
error, was harmless.  See Hayes v.
State, 85 S.W. 3d 809, 816 (Tex. Crim. App. 2002).