

## NUMBER 13-09-00170-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**RUSSELL BOYD KNOWLES,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

### On appeal from the 226th District Court
### of Bexar County, Texas.

## MEMORANDUM OPINION[1]

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Russell Boyd Knowles, was charged by indictment with the murder of

---

[1] By a docket equalization order issued by the Texas Supreme Court, this case was transferred from the Fourth Court of Appeals to the Thirteenth Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). Given that the case originated in the Fourth Court of Appeals, we are bound by the rules of appellate procedure to apply the precedent of the Fourth Court of Appeals in this appeal. *See* TEX. R. APP. P. 41.3.

Raymond Solis while in the course of committing or attempting to commit the offense of robbery, a capital offense. *See* TEX. PENAL CODE ANN. § 19.03(a)(2), (b) (Vernon Supp. 2009). After a jury trial, Knowles was convicted of the murder and received a mandatory sentence of life imprisonment in the Institutional Division of the Texas Department of Criminal Justice without the possibility of parole. *See id.* § 12.31 (Vernon Supp. 2009). By two issues on appeal, Knowles argues that the trial court erred in denying his motion to suppress statements made to police during a custodial interrogation at a hospital because: (1) he did not knowingly, intelligently, and voluntarily waive his rights under article 38.22 of the code of criminal procedure or *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon 2005); and (2) he was taking heavy medication when the statement was made, and, thus, his statements could not have been made voluntarily. Because we find that appellant made his statements to detectives knowingly, intelligently, and voluntarily, we affirm the judgment of the trial court.[2]

## I. BACKGROUND

Knowles was indicted by a Bexar County grand jury for shooting and killing Solis while in the course of committing or attempting to commit a robbery at the Pennies Food Mart, a convenience store in San Antonio, Texas. Testimony at trial established that Solis was a customer in the store at the time of the robbery and that he allegedly struggled to take a gun away from Knowles during the commission of the offense. During the struggle, Knowles was apparently stabbed by a third person in the store, Roland Perez. Once stabbed, Knowles dropped the gun and left the store. Because of his stab wounds, police were able to later identify, locate, and detain Knowles and his accomplice, Larry Summers,

---

[2] As this is a memorandum opinion, and the parties are familiar with the facts of the case, we will only recite those facts which are necessary to advise the parties of this Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

the driver of a getaway car.

Once in police custody, Knowles was taken to University Hospital for treatment of his stab wounds. Doctors at University Hospital confirmed that Knowles was in critical condition as a result of his stab wounds, but that he would live. Jesse Salame, a detective in the homicide unit of the San Antonio Police Department, was assigned to investigate the case. Detective Salame testified that after Knowles's health stabilized, he was transferred to the secured unit of the University Hospital. At this time, approximately four days after the incident, Detective Salame and another detective, Nunez, went to talk to Knowles in his hospital room. Detective Salame recalled that Knowles was wearing a hospital gown and had some medical equipment connected to him at this time. Detectives Salame and Nunez took a digital audio recorder into the room to record Knowles's statements regarding the incident. Detective Salame testified at trial that Knowles gave them statements about the incident, but that, prior to giving the statements, the detectives read Knowles his *Miranda* rights, and Knowles agreed to talk with the detectives. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2; *see also Miranda*, 384 U.S. at 444. Detective Salame recalled that Knowles waived his *Miranda* rights by nodding his head, "basically indicating to me that he understood his rights." When asked about Knowles's condition at the time of the questioning, Detective Salame stated that Knowles "was whispering at first, breathing heavily, whispering. As we got into the interview a little more, his speech became very clear." Detective Salame further stated that at no point during the interview did Knowles attempt to invoke any of his *Miranda* rights. During the interview, Knowles only made one request, which was "to change his position, get up or move from the bed to a chair or something like that." Detective Salame remembered there being water and food in Knowles's room at the time of the interview. The State then proffered the audio recording

3

of Knowles's statement for inclusion in evidence. The trial court, over objections from Knowles, admitted the audio recording into evidence and allowed for the jury to be provided with transcripts of the interview.[3] In his statements to police, Knowles confessed to shooting Solis during the attempted robbery of the convenience store.[4]

On cross-examination, Detective Salame indicated that two days prior to the interview, Knowles had undergone surgery and was intubated and in a medically-induced coma. Detective Salame also noted that when he and Detective Nunez arrived at the hospital, they asked the nurses if they could speak with Knowles, and the nurses obliged. However, neither Detective Salame nor Detective Nunez spoke with any of Knowles's treating physicians even though Detective Salame acknowledged that it might have been prudent to speak with them in order to accurately ascertain Knowles's condition.[5] Detective Salame recalled that Knowles appeared to be in some pain during the interview, and defense counsel suggested that Knowles was on three different medications—Vicodin, morphine, and hydrocodone—at the time of the interview.[6]

On re-direct examination, Detective Salame "didn't feel like he [Knowles] was over[-]medicated to the point where he didn't understand or even intoxicated or in any way impaired to where he wouldn't understand what it was—why I was there and what we

---

[3] Prior to trial, Knowles filed a motion to suppress any statements he made to law enforcement pursuant to article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). After hearings conducted on December 8 and 15, 2008, the trial court denied the motion.

[4] Knowles testified on his own behalf at trial and admitted that the statements he made to police at the hospital contained "[a] lot" of truths and some inaccuracies or "untruths." He also testified that he did not remember speaking to the detectives in the hospital.

[5] However, Detective Salame noted that when he and Detective Nunez arrived at the hospital, neither of them saw any physicians to question. Only a few nurses were available to inquire into Knowles's condition.

[6] Ron Stewart, M.D., a trauma surgeon at the University Hospital, testified that, as a result of his stab wounds, Knowles required surgery to repair "bilateral collapsed lungs" and an injury to his diaphragm. Dr. Stewart described Knowles's injuries as life-threatening and noted that Knowles tested positive for "benzodiazepines, cannabinoids, and alcohol." Dr. Stewart also testified that Knowles was prescribed several painkillers after the surgery, including morphine, Vicodin, Fentanyl, Propofol, and Tylenol with hydrocodone that were administered at various times during his hospital stay.

4

wanted to talk about." Detective Salame testified that Knowles's recollection of the incident was accurate and reflected what investigators believed had happened that evening, based on the evidence. Detective Salame emphasized that it was imperative to get a statement from Knowles as soon as possible to aid in the investigation. Detective Salame also admitted that, at some point in the interview, a nurse advised Knowles to keep talking because "it's good for your lungs."

At the conclusion of the trial, Knowles was convicted by a jury of capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2), (b). The State sought the death penalty in this case, but the jury assessed punishment at life imprisonment without the possibility of parole. *See id.* § 12.31. The trial court signed an order adopting the jury's verdict and subsequently certified Knowles's right to appeal. On February 18, 2009, Knowles filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal ensued.

Subsequently, we abated the appeal and instructed the trial court to conduct an evidentiary hearing and enter findings of fact and conclusions of law regarding Knowles's statements made to the police at the hospital. *See State v. Cullen*, 195 S.W.3d 696, 698-700 (Tex. Crim. App. 2006). On May 20, 2010, the trial court entered written findings of fact and conclusions of law pertaining to Knowles's statements and his motion to suppress. The trial court made the following findings of fact:

2.   The police were conducting a custodial interrogation of the defendant while in the hospital when the statement at issue was made. The statement was recorded on an audio recording device.

3.   Th operator of the recording device was competent and the recording made was accurate and unaltered.

4.   All material voices were identified: Detective Salame, Detective Nunez, and the defendant.

5

5.    The State provided defense counsel . . . with a copy of the recording at least 20 days prior to the date of this proceeding.

6.    The recorded statement shows Detective Salame read the defendant his *Miranda* warnings. To the question, "do you understand these rights?[,]" the defendant nodded his head "yes." Detective Salame said the word "yes" on the recording to indicate the defendant had nodded his head and confirmed affirmatively he understood his rights.

7.    The defendant willingly spoke with the detectives. The defendant did not invoke his right to remain silent or to have counsel present.

(Emphasis added.) The trial court further found that: (1) police did not threaten or attempt to coerce Knowles into making his statement; (2) "[a]ny mental impairment due to medication was not so severe that the defendant was incapable of understanding the meaning and effect of his statement. Defendant's answers were lucid, appropriate, and cohesive. . . . He remembered specific details about . . . the robbery, the getaway vehicle, and how he got to the hospital"; (3) nothing in the record demonstrated that Knowles's statements were given involuntarily; and (4) Detective Salame was a credible witness. Based on its fact findings, the trial court concluded that Knowles knowingly, intelligently, and voluntarily waived his rights under *Miranda* and article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2; *see also Miranda*, 384 U.S. at 444. On appeal, Knowles argues that his statements made to police at the hospital were not knowing, intelligent, or voluntary; thus, they should have been suppressed.[7]

## II. STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review the evidence in

---

[7] In our order of abatement, we requested supplemental briefing from both parties addressing the trial court's findings of fact and conclusions of law. Appellant's supplemental brief was due within ten days of the trial court's May 20, 2010 findings of fact and conclusions of law and the State's supplemental brief was due within ten days of appellant's brief. Neither party has filed a supplemental brief in this matter. Therefore, we will analyze the appellate briefs we have on file.

the light most favorable to the trial court's ruling, *see Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007), and we review the trial court's ruling under a bifurcated standard of review, giving almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *see also State v. Oliver*, 29 S.W.3d 190, 191 (Tex. App.–San Antonio 2000, pet. ref'd). However, when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *See Amador*, 221 S.W.3d at 673; *see also Estrada v. State*, 154 S.w.3d 604, 607 (Tex. Crim. App. 2005).

## III. APPLICABLE LAW

Article 38.22, section 3 of the code of criminal procedure provides that an oral custodial statement is inadmissible as evidence unless, among other things, the accused is warned prior to the statement as provided in section 2 of article 38.22 and knowingly, intelligently, and voluntarily waives the rights set out in the warning; an electronic recording is made of the statement; and all voices on the recording are identified. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). Section 2 of article 38.22 requires that the accused receive the following warnings:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time . . . .

*Id.* at art. 38.22, § 2(a)(1)-(5). An accused must be administered these warnings "or their fully effective equivalent" in order for the statement to be admissible. *Id.* § 3(e)(2); *see Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (stating that the article 38.22, section 2(a) warnings are "virtually identical" to the *Miranda* warnings except for the admonition that an accused has the right to terminate the interview at any time); *see also Paniagua v. State*, No. 13-08-00228-CR, 2010 Tex. App. LEXIS 1331, at *13 n.5 (Tex. App.–Corpus Christi Feb. 25, 2010, no pet.) (mem. op., not designated for publication) (same).

Article 38.22, section 3 is a procedural evidentiary rule rather than a substantive exclusionary rule. *Davidson v. State*, 25 S.W.3d 183, 186 (Tex. Crim. App. 2000). The erroneous admission of a statement in violation of the requirements of this section is non-constitutional error, which we must disregard if it did not affect Knowles's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Nonn v. State*, 117 S.W.3d 874, 881 (Tex. Crim. App. 2003); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex Crim. App. 1998) (op. on reh'g); *see also Andrews v. State*, No. 05-05-00960-CR, 2006 Tex. App. LEXIS 4566, at *9 (Tex. App.–Dallas May 26, 2006, no pet.) (mem. op., not designated for publication). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Nonn*, 117 S.W.3d at 881; *see also King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). However, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001);

8

*Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

**IV. ANALYSIS**

By both of his issues on appeal, Knowles argues that the trial court abused its discretion in denying his motion to suppress the statements he made to police at the hospital. First, Knowles argues that the record does not contain direct evidence demonstrating that he made a knowing, intelligent, and voluntary waiver of his rights afforded under article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. Second, Knowles contends that, because he was under "heavy narcotic medication at the time of his custodial interrogation," and because he was in physical pain during the interview and Detective Salame failed to consult Knowles's treating physicians prior to the interview, Knowles "lacked the mental or physical ability to voluntarily give a statement." The State counters by arguing that Knowles failed to preserve his issues on appeal because he did not mention compliance with article 38.22 or *Miranda* in his arguments or objections. Alternately, the State argues that the evidence demonstrates that Knowles waived his rights under article 38.22 and *Miranda* and that Knowles's statement was given knowingly, intelligently, and voluntarily.

## A.    Preservation of Error

In support of its argument that Knowles did not preserve error, the State directs us to two different arguments made by Knowles regarding the statements made at the hospital: (1) at the December 15, 2008 hearing on his motion to suppress; and (2) at a pretrial hearing conducted on February 2, 2009. At the December 15, 2008 hearing, Knowles objected to the admission of the audiotape of the statements he made at the hospital by arguing the following:

[Defense counsel]: And then, just briefly, Your Honor, the only thing I can think of in regards to—I know you've had a chance now to fully review the audiotape in my case. You've had a chance, I know to look at the transcript several times. It's—I think it's pretty clear from there, from the taking of the tape, there's no—I don't believe and after listening to it myself, I don't believe there's any part of the tape that indicates any type of inducement or fear or illegal persuasion that the detective[s] put upon our client.

The only thing I'm objecting to still, Your Honor, since it was—and you have the dates I'm sure, Judge, of just a couple of days since he was in a coma, expected to die at the hospital, that it was—I think the officer was speaking to him too soon, and, especially, he should have inquired into his—into his chief physician as to his releasing him to be able to talk to anybody. Not just talking to a nurse, who's apparently violated several of the HIPAA rights here in the State of Texas. But that's all we have on our motion, Judge.

Later at the February 2, 2009 hearing, Knowles argued that the audiotape should not be admitted into evidence:

[Defense counsel]: Acetaminophen with hydrocodone in it, which he was allowed to take a tab of that every two to four hours, depending on the amount of pain. So he was in—combination, he was on morphine and hydrocodone, doses of ibuprofen, and this was while he was being interviewed on January 12th. There's actually a notation from the nurse that he was receiving his morphine as supposed to be, directly on the 12th, and, also, he was receiving his hydrocodone pills.

Because of that, Judge, I'm going to reurge my motion that since my client was not under any type of medical release to be interviewed, that he could not have voluntarily given his statement on the facts of the—the effects of the morphine and the ibuprofen with codeine.

. . . .

Because of those medications, Judge, I'm going to ask

10

> you to reconsider your ruling and say this confession was not voluntary, based on the fact he couldn't give— *that he could not voluntarily give up his Miranda warnings and he could not intelligently sign the release on that or give a release orally and proceed with the interview.* And that's all we have.

(Emphasis added.)

The State argues that Knowles's objections can only be construed as an objection to the voluntariness of his statements as it pertains to the medication and that, by construing the objections as encompassing article 38.22, Knowles's duty to make a "specific and timely objection" would be obviated. *See* TEX. R. APP. P. 33.1. The State further argues that, because he did not make a timely and specific objection under article 38.22, Knowles cannot challenge, on appeal, the propriety of the trial court's admission of his statements under article 38.22. *See id.*; *see also Williams v. State*, 883 S.W.2d 317, 318-20 (Tex. App.–Dallas 1994, pet. ref'd). We disagree.

At the February 2, 2009 hearing, Knowles clearly objected to the voluntariness of his statements, arguing that the statements were given while he was medicated and being treated at the hospital. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). Knowles also invoked the intelligence requirement of article 38.22, section 3 in his objection. *See id.* In addition, Knowles clearly references *Miranda* in his objections, and, as we have noted earlier, the article 38.22 requirements are virtually identical to those set forth in *Miranda*. *See Herrera*, 241 S.W.3d at 526; *see also Paniagua*, 2010 Tex. App. LEXIS 1331, at *13 n.5. We believe that the trial court understood Knowles's objections and considered the objections within the context of article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). Based on the foregoing, and given that the trial court overruled all of Knowles's objections to the admission of the audio-taped statements and that Knowles's arguments

11

on appeal are substantially similar to those made in the trial court, we conclude that Knowles's issues pertaining to the audio-taped statements were preserved for appellate review. *See* TEX. R. APP. P. 33.1; *see also Williams*, 883 S.W.2d at 318-20 ("An objection raised on appeal will not be considered if it varies from an objection raised at trial.").

## B.    Knowles's Statements to Police

A person's right to be warned comes into play only when the person is in custody. *See Zavala v. State*, 956 S.W.2d 715, 723 (Tex. App.–Corpus Christi 1997, no pet.). It is undisputed that Detectives Salame and Nunez's interview with Knowles at the hospital constituted a custodial interrogation; thus, it was incumbent upon the detectives to issue Knowles the warnings prescribed in article 38.22, section 2(a). *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. Detective Salame testified that he began Knowles's interview with a recitation of the article 38.22, section 2(a) warnings. *See id.* § 2(a). Detective Salame's testimony was corroborated by the audio recording of the interview. Detective Salame further testified that, after receiving the warnings, Knowles waived his *Miranda* rights.

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights by a preponderance of the evidence. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Miranda*, 384 U.S. at 444, 475; *Hill v. State*, 429 S.W.2d 481, 486 (Tex. Crim. App. 1968)). An inquiry into the waiver of *Miranda* rights "'has two distinct dimensions.'" *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). First, the waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (quoting *Spring*, 479 U.S. at 573). Second, the suspect must have made

the waiver "'with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'"  *Id.* (quoting *Spring*, 479 U.S. at 573).  The "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."  *Spring*, 479 U.S. at 574.  It is enough that a "suspect know that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time."  *Id.*

In *Barefield v. State*, the court of criminal appeals held that Texas's oral-confession statute does not require an express verbal statement from the accused that he waived his rights prior to giving a statement.  784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), *overruled on other grounds by Zimmerman v. State*, 860 S.W.2d 89 (Tex. Crim. App. 1993).  The *Barefield* court reasoned "that in reaching the voluntariness of a confession, [we should look] at the totality of the circumstances."  *Id.* at 41.

On appeal, Knowles argues that he did not waive his rights because "there is no signed 'rights card' or audible response from Appellant[,] just Detective Salame's testimony that Appellant understood his rights."  We do not find Knowles's argument to be persuasive because, as we have noted earlier, an express waiver of rights is not required.  *See Joseph*, 309 S.W.3d at 24-25 ("Appellant argues that he did not 'provid[e] a written waiver' or 'articulate any kind of waiver of his rights.'  But Appellant's objection to the absence of a written or articulated waiver runs contrary to 'the general rule . . . that neither a written nor an oral express waiver is required. . . .  [A] waiver need not assume a particular form and, in some cases, a 'waiver can be clearly inferred from the actions and words of the person interrogated.'") (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988)); *see also Oliver*, 29 S.W.3d at 193

(stating that the "Court of Criminal Appeals has approved the inference of a waiver [of *Miranda* rights] from the totality of the circumstances in the situation where an oral confession contains a recitation of the article 38.22 warnings and the defendant indicates he understands his rights and proceeds without hesitation to participate in the interview"). Furthermore, Knowles does not cite any relevant authority holding that the only way waiver may be proved is by the presentment of direct evidence, such as a signed "rights" card. In fact, Knowles's argument is contrary to established precedent that waiver can be inferred from the actions and words of the accused. *See Butler*, 441 U.S. at 373; *Joseph*, 309 S.W.3d at 24-25; *Watson*, 762 S.W.2d at 193; *Oliver*, 29 S.W.3d at 193.

The State's entire waiver argument is premised on Detective Salame's recounting of the interview and the trial court's conclusion that Detective Salame is a credible witness. In applying the governing standard of review in this case, we are to accord almost total deference to the trial court's determination regarding the credibility and demeanor of the witnesses. *See Amador*, 221 S.W.3d at 673; *see also Oliver*, 29 S.W.3d at 191. Accordingly, we must take Detective Salame's testimony regarding the interview as true, a conclusion that is supported by the audiotape of the interview. *See Amador*, 221 S.W.3d at 673; *see also Oliver*, 29 S.W.3d at 191. Here, Detective Salame testified that: (1) he read Knowles his *Miranda* rights prior to commencing the interview; (2) Knowles nodded his head "yes," indicating that he understood his rights; (3) Detective Salame stated on the tape that Knowles indicated that he understood his rights, and Knowles did not attempt to refute Detective Salame's statement; and (4) Knowles proceeded to answer all of the detectives' questions. Knowles was not asked to sign a "rights card"; however, it is undisputed that Knowles was read his *Miranda* rights prior to questioning.

Based on the totality of the circumstances, we conclude that Knowles knowingly, intelligently, and voluntarily waived his rights under article 38.22. *See Turner v. State*, 252 S.W.3d 571, 583 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (holding that a defendant validly waived his rights when he indicated he understood his rights and proceeded to answer questions); *Hargrove v. State*, 162 S.W.3d 313, 318-19 (Tex. App.–Fort Worth 2005, pet. ref'd) (finding the accused validly waived his rights despite a lack of explicit waiver); *Oliver*, 29 S.W.3d at 193 (finding that, despite a lack of explicit waiver, the accused knowingly, intelligently, and voluntarily made a statement after reading his rights, indicating he understood them, and proceeding without hesitation to discuss the circumstances surrounding a murder).

## C.    The Effect of Medication on Knowles's Statements

Knowles also challenges the trial court's finding that the effect of his medication was not so severe that it prevented him from voluntarily giving his statements to the detectives at the hospital. The State argues that the record demonstrates that Knowles voluntarily gave statements to the detectives and that any impairment that may have been caused by the medication was negligible and did not render Knowles's statement involuntary. We agree.

### 1.    Applicable Law

A confession is involuntary under the Due Process Clause "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999). The "inquiry . . . examines 'whether a

15

defendant's will was overborne' by the circumstances surrounding the giving of the confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Id.* (quoting *Schneckloth*, 412 U.S. at 226). "The determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" *Id.* (quoting *Stein v. New York*, 346 U.S. 156, 185 (1953)).

Statements that courts have found involuntary involve the crucial element of police overreaching and involve fact scenarios in which the suspect was subjected to threats, physical abuse, or extended periods of interrogation without rest or nourishment. *See Oursbourn v. State*, 259 S.W.3d 159, 170-71 (Tex. Crim. App. 2008) (collecting cases). Specifically, the *Oursbourn* court referenced the following fact scenarios involving police overreaching which rendered a confession involuntary: (1) "the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit"; (2) "the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep"; (3) "the police officers held a gun to the head of the wounded suspect to extract a confession"; (4) "the police interrogated the subject intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food"; (5) "the suspect was held for four days with inadequate food and medical attention until he confessed"; (6) "the suspect was subjected to five days of repeated questioning during which police employed coercive tactics"; (7) "the suspect was held incommunicado for three days with little food, and the confession

16

was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail"; and (8) "the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep." *Id.* Based upon these fact scenarios, the *Oursbourn* court stated that "due-process and *Miranda* claims of involuntariness generally do not require 'sweeping inquiries into the state of mind of a criminal defendant who has confessed'"; rather, "[t]hey involve an objective assessment of police behavior." *Id.* at 171.

**2. Discussion**

The trial court, in its findings of fact, specifically determined that nothing in the record indicated that Knowles's statements were involuntary and "[a]ny mental impairment due to medication was not so severe that the defendant was incapable of understanding the meaning and effect of his statement. Defendant's answers were lucid, appropriate, and cohesive. . . . He remembered specific details about . . . the robbery, the getaway vehicle, and how he got to the hospital." The trial court also noted that the record reflected that Knowles was not threatened or coerced by police into making his statements. And, as noted earlier, Knowles's defense counsel admitted that the taped conversation between Knowles and the detectives did not indicate "any type of inducement or fear or illegal persuasion that the detective[s] put upon our client." Furthermore, the record reflects that Knowles was medicated and in some pain at the time of the conversation, yet he was able to recount specific aspects of the robbery, and he was able to articulate a defense—that Summers, the getaway driver, forced Knowles to commit the robbery of the convenience store—although he later admitted that he committed the robbery because he wanted money. Moreover, the audiotape of the interview indicated that the conversation with Knowles lasted approximately forty minutes, and Detective Salame testified that Knowles

17

had water and food in the room, and that Knowles repositioned himself during the interview from the hospital bed to a chair.

On appeal, Knowles argues that, because he was heavily medicated, he was unaware of the meaning and effect of his confession, or in other words, he alleges that his confession was involuntary.[8] In considering the impact of an accused's mental deficiency, "[t]he question is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his confession." *Cornealius v. State*, 870 S.W.2d 169, 175 (Tex. App.–Houston [14th Dist.] 1994), *aff'd*, 900 S.W.2d 731 (Tex. Crim. App. 1995) (citing *Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970); *Green v. State*, 839 S.W.2d 935, 940 (Tex. App.–Waco 1992, pet. ref'd)). However, "[a] confession will not be considered involuntary absent police coercion 'causally related to the confession.'" *Id.* (citing *Connelly*, 479 U.S. at 164; *Walker v. State*, 842 S.W.2d 301, 303 (Tex. App.–Tyler 1992, no pet.)); *see Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995) ("Mental deficiency is a factor, but not alone determinative, in ascertaining the voluntariness of a confession and the waiver of the Fifth Amendment privilege against self-incrimination."). Here, there is no evidence of the detectives using coercive tactics to induce Knowles in to making his statements. In addition, we do not believe that the circumstances surrounding Knowles's interview with the detectives are analogous to the

---

[8] The thrust of Knowles's argument in his second issue appears to be that the detectives should have waited a few more days until interviewing him because he had recently been in a coma and was medicated. However, Knowles does not direct us to evidence clearly demonstrating that the detectives' tactics in interviewing him were coercive so as to render his statements involuntary. *See State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). In addition, Knowles does not point to evidence in the record indicating that he was unaware of the meaning and impact of his statements because he was medicated, especially considering the record shows that Knowles was able to recall many specific details pertaining to the incident, and he was able to articulate a defense—that Summers was the true guilty party. *See Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970) (stating that "if the mental subnormality is so great that an accused is incapable of understanding the meaning and effect of his confession, then it would not be admissible") (citing *Grayson v. State*, 40 Tex. Crim. 573, 51 S.W. 246, 246 (1899)).

examples of police overreaching outlined in *Oursbourn*. *See Oursbourn*, 259 S.W.3d at 170-71. Because there is no evidence of police overreaching or coercion, and because Knowles's answers were lucid and coherent, we cannot conclude that his confession to detectives at the hospital was involuntary. *See Dickerson*, 530 U.S. at 434; *Connelly*, 479 U.S. at 164; *Schneckloth*, 412 U.S. at 226; *Casias*, 452 S.W.2d at 488; *Cornealius*, 870 S.W.2d at 175.

Therefore, in reviewing the evidence in the light most favorable to the trial court's order, we hold that the trial court did not abuse its discretion in denying Knowles's motion to suppress. *See Guzman*, 955 S.W.2d at 89; *see Gutierrez*, 221 S.W.3d at 687. Accordingly, we overrule both of Knowles's issues on appeal.

## V. Conclusion

Having overruled both of Knowles's issues on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
Tex. R. App. P. 47.2(b)
Delivered and filed the
19th day of August, 2010.