NUMBER 13-09-00170-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

RUSSELL BOYD KNOWLES, Appellant,


v.

 

THE STATE OF TEXAS, Appellee.

 


On appeal from the 226th District Court

of Bexar County, Texas.

 


 MEMORANDUM OPINION (1) 

 

Before Chief Justice Valdez and Justices Yañez and Garza


 Memorandum Opinion by Chief Justice Valdez
 

 Appellant, Russell Boyd Knowles, was charged by indictment with the murder of
Raymond Solis while in the course of committing or attempting to commit the offense of
robbery, a capital offense. See Tex. Penal Code Ann. § 19.03(a)(2), (b) (Vernon Supp.
2009). After a jury trial, Knowles was convicted of the murder and received a mandatory
sentence of life imprisonment in the Institutional Division of the Texas Department of
Criminal Justice without the possibility of parole. See id. § 12.31 (Vernon Supp. 2009). 
By two issues on appeal, Knowles argues that the trial court erred in denying his motion
to suppress statements made to police during a custodial interrogation at a hospital
because: (1) he did not knowingly, intelligently, and voluntarily waive his rights under
article 38.22 of the code of criminal procedure or Miranda v. Arizona, 384 U.S. 436, 444
(1966), see Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005); and (2) he was
taking heavy medication when the statement was made, and, thus, his statements could
not have been made voluntarily. Because we find that appellant made his statements to
detectives knowingly, intelligently, and voluntarily, we affirm the judgment of the trial court. (2)

I. Background

 Knowles was indicted by a Bexar County grand jury for shooting and killing Solis
while in the course of committing or attempting to commit a robbery at the Pennies Food
Mart, a convenience store in San Antonio, Texas. Testimony at trial established that Solis
was a customer in the store at the time of the robbery and that he allegedly struggled to
take a gun away from Knowles during the commission of the offense. During the struggle,
Knowles was apparently stabbed by a third person in the store, Roland Perez. Once
stabbed, Knowles dropped the gun and left the store. Because of his stab wounds, police
were able to later identify, locate, and detain Knowles and his accomplice, Larry Summers,
the driver of a getaway car.

 Once in police custody, Knowles was taken to University Hospital for treatment of
his stab wounds. Doctors at University Hospital confirmed that Knowles was in critical
condition as a result of his stab wounds, but that he would live. Jesse Salame, a detective
in the homicide unit of the San Antonio Police Department, was assigned to investigate the
case. Detective Salame testified that after Knowles's health stabilized, he was transferred
to the secured unit of the University Hospital. At this time, approximately four days after
the incident, Detective Salame and another detective, Nunez, went to talk to Knowles in
his hospital room. Detective Salame recalled that Knowles was wearing a hospital gown
and had some medical equipment connected to him at this time. Detectives Salame and
Nunez took a digital audio recorder into the room to record Knowles's statements regarding
the incident. Detective Salame testified at trial that Knowles gave them statements about
the incident, but that, prior to giving the statements, the detectives read Knowles his
Miranda rights, and Knowles agreed to talk with the detectives. See Tex. Code Crim.
Proc. Ann. art. 38.22, § 2; see also Miranda, 384 U.S. at 444. Detective Salame recalled
that Knowles waived his Miranda rights by nodding his head, "basically indicating to me
that he understood his rights." When asked about Knowles's condition at the time of the
questioning, Detective Salame stated that Knowles "was whispering at first, breathing
heavily, whispering. As we got into the interview a little more, his speech became very
clear." Detective Salame further stated that at no point during the interview did Knowles
attempt to invoke any of his Miranda rights. During the interview, Knowles only made one
request, which was "to change his position, get up or move from the bed to a chair or
something like that." Detective Salame remembered there being water and food in
Knowles's room at the time of the interview. The State then proffered the audio recording
of Knowles's statement for inclusion in evidence. The trial court, over objections from
Knowles, admitted the audio recording into evidence and allowed for the jury to be
provided with transcripts of the interview. (3) In his statements to police, Knowles confessed
to shooting Solis during the attempted robbery of the convenience store. (4) 

 On cross-examination, Detective Salame indicated that two days prior to the
interview, Knowles had undergone surgery and was intubated and in a medically-induced
coma. Detective Salame also noted that when he and Detective Nunez arrived at the
hospital, they asked the nurses if they could speak with Knowles, and the nurses obliged. 
However, neither Detective Salame nor Detective Nunez spoke with any of Knowles's
treating physicians even though Detective Salame acknowledged that it might have been
prudent to speak with them in order to accurately ascertain Knowles's condition. (5) Detective
Salame recalled that Knowles appeared to be in some pain during the interview, and
defense counsel suggested that Knowles was on three different medications--Vicodin,
morphine, and hydrocodone--at the time of the interview. (6) 

 On re-direct examination, Detective Salame "didn't feel like he [Knowles] was over[-]medicated to the point where he didn't understand or even intoxicated or in any way
impaired to where he wouldn't understand what it was--why I was there and what we
wanted to talk about." Detective Salame testified that Knowles's recollection of the incident
was accurate and reflected what investigators believed had happened that evening, based
on the evidence. Detective Salame emphasized that it was imperative to get a statement
from Knowles as soon as possible to aid in the investigation. Detective Salame also
admitted that, at some point in the interview, a nurse advised Knowles to keep talking
because "it's good for your lungs." 

 At the conclusion of the trial, Knowles was convicted by a jury of capital murder. 
See Tex. Penal Code Ann. § 19.03(a)(2), (b). The State sought the death penalty in this
case, but the jury assessed punishment at life imprisonment without the possibility of
parole. See id. § 12.31. The trial court signed an order adopting the jury's verdict and
subsequently certified Knowles's right to appeal. On February 18, 2009, Knowles filed a
motion for new trial, which was overruled by operation of law. See Tex. R. App. P. 21.8(a),
(c). This appeal ensued.

 Subsequently, we abated the appeal and instructed the trial court to conduct an
evidentiary hearing and enter findings of fact and conclusions of law regarding Knowles's
statements made to the police at the hospital. See State v. Cullen, 195 S.W.3d 696, 698-700 (Tex. Crim. App. 2006). On May 20, 2010, the trial court entered written findings of
fact and conclusions of law pertaining to Knowles's statements and his motion to suppress. 
The trial court made the following findings of fact:

 2. The police were conducting a custodial interrogation of the defendant
while in the hospital when the statement at issue was made. The
statement was recorded on an audio recording device.

 3. Th operator of the recording device was competent and the recording
made was accurate and unaltered.


 4. All material voices were identified: Detective Salame, Detective
Nunez, and the defendant.

 5. The State provided defense counsel . . . with a copy of the recording
at least 20 days prior to the date of this proceeding.

 6. The recorded statement shows Detective Salame read the defendant
his Miranda warnings. To the question, "do you understand these
rights?[,]" the defendant nodded his head "yes." Detective Salame
said the word "yes" on the recording to indicate the defendant had
nodded his head and confirmed affirmatively he understood his rights.

 7. The defendant willingly spoke with the detectives. The defendant did
not invoke his right to remain silent or to have counsel present.

(Emphasis added.) The trial court further found that: (1) police did not threaten or attempt
to coerce Knowles into making his statement; (2) "[a]ny mental impairment due to
medication was not so severe that the defendant was incapable of understanding the
meaning and effect of his statement. Defendant's answers were lucid, appropriate, and
cohesive. . . . He remembered specific details about . . . the robbery, the getaway vehicle,
and how he got to the hospital"; (3) nothing in the record demonstrated that Knowles's
statements were given involuntarily; and (4) Detective Salame was a credible witness. 
Based on its fact findings, the trial court concluded that Knowles knowingly, intelligently,
and voluntarily waived his rights under Miranda and article 38.22 of the code of criminal
procedure. See Tex. Code Crim. Proc. Ann. art. 38.22, § 2; see also Miranda, 384 U.S.
at 444. On appeal, Knowles argues that his statements made to police at the hospital were
not knowing, intelligent, or voluntary; thus, they should have been suppressed. (7) 

II. Standard of Review

 A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review the evidence in
the light most favorable to the trial court's ruling, see Gutierrez v. State, 221 S.W.3d 680,
687 (Tex. Crim. App. 2007), and we review the trial court's ruling under a bifurcated
standard of review, giving almost total deference to the trial court's rulings on (1) questions
of historical fact, even if the trial court's determination of those facts was not based on an
evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor. See Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); see also State v. Oliver, 29 S.W.3d 190, 191 (Tex. App.-San
Antonio 2000, pet. ref'd). However, when application-of-law-to-fact questions do not turn
on the credibility and demeanor of the witnesses, we review the trial court's ruling on those
questions de novo. See Amador, 221 S.W.3d at 673; see also Estrada v. State, 154
S.w.3d 604, 607 (Tex. Crim. App. 2005).

III. Applicable Law

 Article 38.22, section 3 of the code of criminal procedure provides that an oral
custodial statement is inadmissible as evidence unless, among other things, the accused
is warned prior to the statement as provided in section 2 of article 38.22 and knowingly,
intelligently, and voluntarily waives the rights set out in the warning; an electronic recording
is made of the statement; and all voices on the recording are identified. Tex. Code Crim.
Proc. Ann. art. 38.22, § 3(a). Section 2 of article 38.22 requires that the accused receive
the following warnings:

 (1) he has the right to remain silent and not make any statement at all and
that any statement he makes may be used against him at his trial;

 

 (2) any statement he makes may be used as evidence against him in court; 

 (3) he has the right to have a lawyer present to advise him prior to and during
any questioning;

 

 (4) if he is unable to employ a lawyer, he has the right to have a lawyer
appointed to advise him prior to and during any questioning; and 

 

 (5) he has the right to terminate the interview at any time . . . .


Id. at art. 38.22, § 2(a)(1)-(5). An accused must be administered these warnings "or their
fully effective equivalent" in order for the statement to be admissible. Id. § 3(e)(2); see
Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (stating that the article
38.22, section 2(a) warnings are "virtually identical" to the Miranda warnings except for the
admonition that an accused has the right to terminate the interview at any time); see also
Paniagua v. State, No. 13-08-00228-CR, 2010 Tex. App. LEXIS 1331, at *13 n.5 (Tex.
App.-Corpus Christi Feb. 25, 2010, no pet.) (mem. op., not designated for publication)
(same).

 Article 38.22, section 3 is a procedural evidentiary rule rather than a substantive
exclusionary rule. Davidson v. State, 25 S.W.3d 183, 186 (Tex. Crim. App. 2000). The
erroneous admission of a statement in violation of the requirements of this section is non-constitutional error, which we must disregard if it did not affect Knowles's substantial rights. 
See Tex. R. App. P. 44.2(b); Nonn v. State, 117 S.W.3d 874, 881 (Tex. Crim. App. 2003);
Mosley v. State, 983 S.W.2d 249, 259 (Tex Crim. App. 1998) (op. on reh'g); see also
Andrews v. State, No. 05-05-00960-CR, 2006 Tex. App. LEXIS 4566, at *9 (Tex.
App.-Dallas May 26, 2006, no pet.) (mem. op., not designated for publication). A
substantial right is affected when the error had a substantial and injurious effect or
influence in determining the jury's verdict. See Nonn, 117 S.W.3d at 881; see also King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). However, an error does not affect
a substantial right if we have "fair assurance that the error did not influence the jury, or had
but a slight effect." Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001);
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

IV. Analysis

 By both of his issues on appeal, Knowles argues that the trial court abused its
discretion in denying his motion to suppress the statements he made to police at the
hospital. First, Knowles argues that the record does not contain direct evidence
demonstrating that he made a knowing, intelligent, and voluntary waiver of his rights
afforded under article 38.22 of the code of criminal procedure. See Tex. Code Crim. Proc.
Ann. art. 38.22. Second, Knowles contends that, because he was under "heavy narcotic
medication at the time of his custodial interrogation," and because he was in physical pain
during the interview and Detective Salame failed to consult Knowles's treating physicians
prior to the interview, Knowles "lacked the mental or physical ability to voluntarily give a
statement." The State counters by arguing that Knowles failed to preserve his issues on
appeal because he did not mention compliance with article 38.22 or Miranda in his
arguments or objections. Alternately, the State argues that the evidence demonstrates that
Knowles waived his rights under article 38.22 and Miranda and that Knowles's statement
was given knowingly, intelligently, and voluntarily.

A. Preservation of Error

 In support of its argument that Knowles did not preserve error, the State directs us
to two different arguments made by Knowles regarding the statements made at the
hospital: (1) at the December 15, 2008 hearing on his motion to suppress; and (2) at a
pretrial hearing conducted on February 2, 2009. At the December 15, 2008 hearing,
Knowles objected to the admission of the audiotape of the statements he made at the
hospital by arguing the following:

 [Defense counsel]: And then, just briefly, Your Honor, the only thing I can
think of in regards to--I know you've had a chance now
to fully review the audiotape in my case. You've had a
chance, I know to look at the transcript several times. 
It's--I think it's pretty clear from there, from the taking
of the tape, there's no--I don't believe and after
listening to it myself, I don't believe there's any part of
the tape that indicates any type of inducement or fear or
illegal persuasion that the detective[s] put upon our
client.

 

 The only thing I'm objecting to still, Your Honor,
since it was--and you have the dates I'm sure, Judge,
of just a couple of days since he was in a coma,
expected to die at the hospital, that it was--I think the
officer was speaking to him too soon, and, especially,
he should have inquired into his--into his chief
physician as to his releasing him to be able to talk to
anybody. Not just talking to a nurse, who's apparently
violated several of the HIPAA rights here in the State of
Texas. But that's all we have on our motion, Judge.


 Later at the February 2, 2009 hearing, Knowles argued that the audiotape should
not be admitted into evidence:

 [Defense counsel]: Acetaminophen with hydrocodone in it, which he was
allowed to take a tab of that every two to four hours,
depending on the amount of pain. So he was
in--combination, he was on morphine and
hydrocodone, doses of ibuprofen, and this was while he
was being interviewed on January 12th. There's
actually a notation from the nurse that he was receiving
his morphine as supposed to be, directly on the 12th,
and, also, he was receiving his hydrocodone pills.


 Because of that, Judge, I'm going to reurge my motion
that since my client was not under any type of medical
release to be interviewed, that he could not have
voluntarily given his statement on the facts of the--the
effects of the morphine and the ibuprofen with codeine.

 

 . . . .

 

 Because of those medications, Judge, I'm going to ask
you to reconsider your ruling and say this confession
was not voluntary, based on the fact he couldn't give--
that he could not voluntarily give up his Miranda
warnings and he could not intelligently sign the release
on that or give a release orally and proceed with the
interview. And that's all we have.


(Emphasis added.)

 The State argues that Knowles's objections can only be construed as an objection
to the voluntariness of his statements as it pertains to the medication and that, by
construing the objections as encompassing article 38.22, Knowles's duty to make a
"specific and timely objection" would be obviated. See Tex. R. App. P. 33.1. The State
further argues that, because he did not make a timely and specific objection under article
38.22, Knowles cannot challenge, on appeal, the propriety of the trial court's admission of
his statements under article 38.22. See id.; see also Williams v. State, 883 S.W.2d 317,
318-20 (Tex. App.-Dallas 1994, pet. ref'd). We disagree.

 At the February 2, 2009 hearing, Knowles clearly objected to the voluntariness of
his statements, arguing that the statements were given while he was medicated and being
treated at the hospital. See Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a). Knowles also
invoked the intelligence requirement of article 38.22, section 3 in his objection. See id. In
addition, Knowles clearly references Miranda in his objections, and, as we have noted
earlier, the article 38.22 requirements are virtually identical to those set forth in Miranda.
See Herrera, 241 S.W.3d at 526; see also Paniagua, 2010 Tex. App. LEXIS 1331, at *13
n.5. We believe that the trial court understood Knowles's objections and considered the
objections within the context of article 38.22. See Tex. Code Crim. Proc. Ann. art. 38.22,
§ 3(a). Based on the foregoing, and given that the trial court overruled all of Knowles's
objections to the admission of the audio-taped statements and that Knowles's arguments
on appeal are substantially similar to those made in the trial court, we conclude that
Knowles's issues pertaining to the audio-taped statements were preserved for appellate
review. See Tex. R. App. P. 33.1; see also Williams, 883 S.W.2d at 318-20 ("An objection
raised on appeal will not be considered if it varies from an objection raised at trial."). 

B. Knowles's Statements to Police

 A person's right to be warned comes into play only when the person is in custody. 
See Zavala v. State, 956 S.W.2d 715, 723 (Tex. App.-Corpus Christi 1997, no pet.). It is
undisputed that Detectives Salame and Nunez's interview with Knowles at the hospital
constituted a custodial interrogation; thus, it was incumbent upon the detectives to issue
Knowles the warnings prescribed in article 38.22, section 2(a). See Tex. Code Crim. Proc.
Ann. art. 38.22, § 2. Detective Salame testified that he began Knowles's interview with a
recitation of the article 38.22, section 2(a) warnings. See id. § 2(a). Detective Salame's
testimony was corroborated by the audio recording of the interview. Detective Salame
further testified that, after receiving the warnings, Knowles waived his Miranda rights.

 The State has the burden of showing that a defendant knowingly, intelligently, and
voluntarily waived his Miranda rights by a preponderance of the evidence. Joseph v. State,
309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citing Colorado v. Connelly, 479 U.S. 157, 168
(1986); Miranda, 384 U.S. at 444, 475; Hill v. State, 429 S.W.2d 481, 486 (Tex. Crim. App.
1968)). An inquiry into the waiver of Miranda rights "'has two distinct dimensions.'"
Ripkowski v. State, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (quoting Colorado v.
Spring, 479 U.S. 564, 573 (1987)). First, the waiver must be "'voluntary in the sense that
it was the product of a free and deliberate choice rather than intimidation, coercion, or
deception.'" Id. (quoting Spring, 479 U.S. at 573). Second, the suspect must have made
the waiver "'with a full awareness both of the nature of the right being abandoned and the
consequences of the decision to abandon it.'" Id. (quoting Spring, 479 U.S. at 573). The
"Constitution does not require that a criminal suspect know and understand every possible
consequence of a waiver of the Fifth Amendment privilege." Spring, 479 U.S. at 574. It
is enough that a "suspect know that he may choose not to talk to law enforcement officers,
to talk only with counsel present, or to discontinue talking at any time." Id.

 In Barefield v. State, the court of criminal appeals held that Texas's oral-confession
statute does not require an express verbal statement from the accused that he waived his
rights prior to giving a statement. 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), overruled
on other grounds by Zimmerman v. State, 860 S.W.2d 89 (Tex. Crim. App. 1993). The
Barefield court reasoned "that in reaching the voluntariness of a confession, [we should
look] at the totality of the circumstances." Id. at 41. 

 On appeal, Knowles argues that he did not waive his rights because "there is no
signed 'rights card' or audible response from Appellant[,] just Detective Salame's testimony
that Appellant understood his rights." We do not find Knowles's argument to be persuasive
because, as we have noted earlier, an express waiver of rights is not required. See
Joseph, 309 S.W.3d at 24-25 ("Appellant argues that he did not 'provid[e] a written waiver'
or 'articulate any kind of waiver of his rights.' But Appellant's objection to the absence of
a written or articulated waiver runs contrary to 'the general rule . . . that neither a written
nor an oral express waiver is required. . . . [A] waiver need not assume a particular form
and, in some cases, a 'waiver can be clearly inferred from the actions and words of the
person interrogated.'") (quoting North Carolina v. Butler, 441 U.S. 369, 373 (1979); Watson
v. State, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988)); see also Oliver, 29 S.W.3d at 193
(stating that the "Court of Criminal Appeals has approved the inference of a waiver [of
Miranda rights] from the totality of the circumstances in the situation where an oral
confession contains a recitation of the article 38.22 warnings and the defendant indicates
he understands his rights and proceeds without hesitation to participate in the interview"). 
Furthermore, Knowles does not cite any relevant authority holding that the only way waiver
may be proved is by the presentment of direct evidence, such as a signed "rights" card. 
In fact, Knowles's argument is contrary to established precedent that waiver can be
inferred from the actions and words of the accused. See Butler, 441 U.S. at 373; Joseph,
309 S.W.3d at 24-25; Watson, 762 S.W.2d at 193; Oliver, 29 S.W.3d at 193. 

 The State's entire waiver argument is premised on Detective Salame's recounting
of the interview and the trial court's conclusion that Detective Salame is a credible witness. 
In applying the governing standard of review in this case, we are to accord almost total
deference to the trial court's determination regarding the credibility and demeanor of the
witnesses. See Amador, 221 S.W.3d at 673; see also Oliver, 29 S.W.3d at 191. 
Accordingly, we must take Detective Salame's testimony regarding the interview as true,
a conclusion that is supported by the audiotape of the interview. See Amador, 221 S.W.3d
at 673; see also Oliver, 29 S.W.3d at 191. Here, Detective Salame testified that: (1) he
read Knowles his Miranda rights prior to commencing the interview; (2) Knowles nodded
his head "yes," indicating that he understood his rights; (3) Detective Salame stated on the
tape that Knowles indicated that he understood his rights, and Knowles did not attempt to
refute Detective Salame's statement; and (4) Knowles proceeded to answer all of the
detectives' questions. Knowles was not asked to sign a "rights card"; however, it is
undisputed that Knowles was read his Miranda rights prior to questioning. 

 Based on the totality of the circumstances, we conclude that Knowles knowingly,
intelligently, and voluntarily waived his rights under article 38.22. See Turner v. State, 252
S.W.3d 571, 583 (Tex. App.-Houston [14th Dist.] 2008, pet. ref'd) (holding that a
defendant validly waived his rights when he indicated he understood his rights and
proceeded to answer questions); Hargrove v. State, 162 S.W.3d 313, 318-19 (Tex.
App.-Fort Worth 2005, pet. ref'd) (finding the accused validly waived his rights despite a
lack of explicit waiver); Oliver, 29 S.W.3d at 193 (finding that, despite a lack of explicit
waiver, the accused knowingly, intelligently, and voluntarily made a statement after reading
his rights, indicating he understood them, and proceeding without hesitation to discuss the
circumstances surrounding a murder). 

C. The Effect of Medication on Knowles's Statements

 Knowles also challenges the trial court's finding that the effect of his medication was
not so severe that it prevented him from voluntarily giving his statements to the detectives
at the hospital. The State argues that the record demonstrates that Knowles voluntarily
gave statements to the detectives and that any impairment that may have been caused by
the medication was negligible and did not render Knowles's statement involuntary. We
agree. 

 1. Applicable Law

 A confession is involuntary under the Due Process Clause "only if there was official,
coercive conduct of such a nature that any statement obtained thereby was unlikely to
have been the product of an essentially free and unconstrained choice by its maker." 
Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); see State v. Terrazas, 4
S.W.3d 720, 723 (Tex. Crim. App. 1999). The "inquiry . . . examines 'whether a
defendant's will was overborne' by the circumstances surrounding the giving of the
confession." Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth
v. Bustamonte, 412 U.S. 218, 226 (1973)). "The due process test takes into consideration
'the totality of all the surrounding circumstances--both the characteristics of the accused
and the details of the interrogation.'" Id. (quoting Schneckloth, 412 U.S. at 226). "The
determination 'depend[s] upon a weighing of the circumstances of pressure against the
power of resistance of the person confessing.'" Id. (quoting Stein v. New York, 346 U.S.
156, 185 (1953)). 

 Statements that courts have found involuntary involve the crucial element of police
overreaching and involve fact scenarios in which the suspect was subjected to threats,
physical abuse, or extended periods of interrogation without rest or nourishment. See
Oursbourn v. State, 259 S.W.3d 159, 170-71 (Tex. Crim. App. 2008) (collecting cases). 
Specifically, the Oursbourn court referenced the following fact scenarios involving police
overreaching which rendered a confession involuntary: (1) "the suspect was subjected to
a four-hour interrogation while incapacitated and sedated in an intensive-care unit"; (2) "the
suspect, while on medication, was interrogated for over eighteen hours without food,
medication, or sleep"; (3) "the police officers held a gun to the head of the wounded
suspect to extract a confession"; (4) "the police interrogated the subject intermittently for
sixteen days using coercive tactics while he was held incommunicado in a closed cell
without windows and was given limited food"; (5) "the suspect was held for four days with
inadequate food and medical attention until he confessed"; (6) "the suspect was subjected
to five days of repeated questioning during which police employed coercive tactics"; (7)
"the suspect was held incommunicado for three days with little food, and the confession
was obtained when officers informed him that their chief was preparing to admit a lynch
mob into the jail"; and (8) "the suspect was questioned by relays of officers for thirty-six
hours without an opportunity for sleep." Id. Based upon these fact scenarios, the
Oursbourn court stated that "due-process and Miranda claims of involuntariness generally
do not require 'sweeping inquiries into the state of mind of a criminal defendant who has
confessed'"; rather, "[t]hey involve an objective assessment of police behavior." Id. at 171.

 2. Discussion

 The trial court, in its findings of fact, specifically determined that nothing in the
record indicated that Knowles's statements were involuntary and "[a]ny mental impairment
due to medication was not so severe that the defendant was incapable of understanding
the meaning and effect of his statement. Defendant's answers were lucid, appropriate, and
cohesive. . . . He remembered specific details about . . . the robbery, the getaway vehicle,
and how he got to the hospital." The trial court also noted that the record reflected that
Knowles was not threatened or coerced by police into making his statements. And, as
noted earlier, Knowles's defense counsel admitted that the taped conversation between 
Knowles and the detectives did not indicate "any type of inducement or fear or illegal
persuasion that the detective[s] put upon our client." Furthermore, the record reflects that
Knowles was medicated and in some pain at the time of the conversation, yet he was able
to recount specific aspects of the robbery, and he was able to articulate a defense--that
Summers, the getaway driver, forced Knowles to commit the robbery of the convenience
store--although he later admitted that he committed the robbery because he wanted
money. Moreover, the audiotape of the interview indicated that the conversation with
Knowles lasted approximately forty minutes, and Detective Salame testified that Knowles
had water and food in the room, and that Knowles repositioned himself during the interview
from the hospital bed to a chair.

 On appeal, Knowles argues that, because he was heavily medicated, he was
unaware of the meaning and effect of his confession, or in other words, he alleges that his
confession was involuntary. (8) In considering the impact of an accused's mental deficiency,
"[t]he question is whether the accused's mental impairment is so severe that he is
incapable of understanding the meaning and effect of his confession." Cornealius v. State,
870 S.W.2d 169, 175 (Tex. App.-Houston [14th Dist.] 1994), aff'd, 900 S.W.2d 731 (Tex.
Crim. App. 1995) (citing Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970);
Green v. State, 839 S.W.2d 935, 940 (Tex. App.-Waco 1992, pet. ref'd)). However, "[a]
confession will not be considered involuntary absent police coercion 'causally related to the
confession.'" Id. (citing Connelly, 479 U.S. at 164; Walker v. State, 842 S.W.2d 301, 303
(Tex. App.-Tyler 1992, no pet.)); see Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim.
App. 1995) ("Mental deficiency is a factor, but not alone determinative, in ascertaining the
voluntariness of a confession and the waiver of the Fifth Amendment privilege against self-incrimination."). Here, there is no evidence of the detectives using coercive tactics to
induce Knowles in to making his statements. In addition, we do not believe that the
circumstances surrounding Knowles's interview with the detectives are analogous to the
examples of police overreaching outlined in Oursbourn. See Oursbourn, 259 S.W.3d at
170-71. Because there is no evidence of police overreaching or coercion, and because
Knowles's answers were lucid and coherent, we cannot conclude that his confession to
detectives at the hospital was involuntary. See Dickerson, 530 U.S. at 434; Connelly, 479
U.S. at 164; Schneckloth, 412 U.S. at 226; Casias, 452 S.W.2d at 488; Cornealius, 870
S.W.2d at 175. 

 Therefore, in reviewing the evidence in the light most favorable to the trial court's
order, we hold that the trial court did not abuse its discretion in denying Knowles's motion
to suppress. See Guzman, 955 S.W.2d at 89; see Gutierrez, 221 S.W.3d at 687. 
Accordingly, we overrule both of Knowles's issues on appeal. V. Conclusion

 Having overruled both of Knowles's issues on appeal, we affirm the judgment of the
trial court. 

 ________________________

 ROGELIO VALDEZ

 Chief Justice 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

19th day of August, 2010. 


 
1. By a docket equalization order issued by the Texas Supreme Court, this case was transferred from
the Fourth Court of Appeals to the Thirteenth Court of Appeals. See Tex. Gov't Code Ann. § 73.001 (Vernon
2005). Given that the case originated in the Fourth Court of Appeals, we are bound by the rules of appellate
procedure to apply the precedent of the Fourth Court of Appeals in this appeal. See Tex. R. App. P. 41.3.
2. As this is a memorandum opinion, and the parties are familiar with the facts of the case, we will only
recite those facts which are necessary to advise the parties of this Court's decision and the basic reasons for
it. See Tex. R. App. P. 47.4.
3. Prior to trial, Knowles filed a motion to suppress any statements he made to law enforcement
pursuant to article 38.22 of the code of criminal procedure. See Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 2005). After hearings conducted on December 8 and 15, 2008, the trial court denied the motion. 
4. Knowles testified on his own behalf at trial and admitted that the statements he made to police at
the hospital contained "[a] lot" of truths and some inaccuracies or "untruths." He also testified that he did not
remember speaking to the detectives in the hospital.
5. However, Detective Salame noted that when he and Detective Nunez arrived at the hospital, neither
of them saw any physicians to question. Only a few nurses were available to inquire into Knowles's condition.
6. Ron Stewart, M.D., a trauma surgeon at the University Hospital, testified that, as a result of his stab
wounds, Knowles required surgery to repair "bilateral collapsed lungs" and an injury to his diaphragm. Dr.
Stewart described Knowles's injuries as life-threatening and noted that Knowles tested positive for
"benzodiazepines, cannabinoids, and alcohol." Dr. Stewart also testified that Knowles was prescribed several
painkillers after the surgery, including morphine, Vicodin, Fentanyl, Propofol, and Tylenol with hydrocodone
that were administered at various times during his hospital stay.
7. In our order of abatement, we requested supplemental briefing from both parties addressing the trial
court's findings of fact and conclusions of law. Appellant's supplemental brief was due within ten days of the
trial court's May 20, 2010 findings of fact and conclusions of law and the State's supplemental brief was due
within ten days of appellant's brief. Neither party has filed a supplemental brief in this matter. Therefore, we
will analyze the appellate briefs we have on file.
8. The thrust of Knowles's argument in his second issue appears to be that the detectives should have
waited a few more days until interviewing him because he had recently been in a coma and was medicated. 
However, Knowles does not direct us to evidence clearly demonstrating that the detectives' tactics in
interviewing him were coercive so as to render his statements involuntary. See State v. Terrazas, 4 S.W.3d
720, 723 (Tex. Crim. App. 1999); Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). In addition,
Knowles does not point to evidence in the record indicating that he was unaware of the meaning and impact
of his statements because he was medicated, especially considering the record shows that Knowles was able
to recall many specific details pertaining to the incident, and he was able to articulate a defense--that
Summers was the true guilty party. See Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970) (stating
that "if the mental subnormality is so great that an accused is incapable of understanding the meaning and
effect of his confession, then it would not be admissible") (citing Grayson v. State, 40 Tex. Crim. 573, 51 S.W.
246, 246 (1899)).